### OF

# THE SUPREME COURT

### OF THE

# STATE OF ILLINOIS,

## JANUARY TERM, 1860, AT SPRINGFIELD.

JACOB GREGG *et al.*, Plaintiffs in Error, *v.* HIRAM SANFORD, Defendant in Error.

### ERROR TO EDGAR.

Property to be acquired after the execution of a mortgage, is subject to the mortgage lien, if the deed is properly executed, acknowledged and recorded, and possession is taken of the property before any other lien has attached.

A mortgage of personal property cannot hold the thing mortgaged as against a judgment creditor, unless his mortgage is recorded in accordance with the statute. Such a mortgage is an executory contract, and possession must be taken by the mortgagee in order to hold the property.

THIS is a bill in chancery, filed by Hiram Sanford in the Edgar Circuit Court, against William Snyder, Jacob Gregg and others, on which an injunction was obtained, restraining the defendant, Wm. Snyder, who is the sheriff of Edgar county, from proceeding to sell one hundred and fifty head of hogs, upon which he had levied an execution, issued by the clerk of the Circuit Court, upon a judgment obtained in said court by the defendant, Jacob Gregg, against one M. S. Edmiston and David Edmiston. The hogs were levied upon as the property of David Edmiston. The bill sets out that the defendant, David Edmiston, was largely indebted to the complainant for interest due on a note for $11,000, given for the purchase money on a tract of land, and in divers smaller sums for other things set out; and among others, for $1,758.24, money advanced by said complainant to said David Edmiston, to purchase hogs, and that the com-

2

plainant was under obligation to advance to the said Edmiston, further sums for that purpose, making in all the sum of $5,000. Also, that the complainant was the security of said Edmiston, on a contract with Messrs. Powell, McEwing & Co., of Madison, Indiana, to deliver to them one thousand corn-fatted hogs, by the 20th day of December next; to fill which contract the money advanced and furnished by the complainant was to be used for the purchase of hogs, and corn and pasture to feed and fat the same; and that in order to secure the payment of said sums of money so advanced, and said indebtedness of the said Edmiston, as well as to indemnify him as the security on said hog contract, (which is filed as an exhibit with the bill,) the said David Edmiston made and executed to the complainant a mortgage, which is made an exhibit, and filed with the bill of complaint. The mortgage, as the consideration on which it is based, sets out the aforesaid indebtedness for the money advanced by the complainant to purchase hogs to fill the contract, and his liability as security upon said contract. The mortgaged property includes some real estate, a large amount of chattel property, and among other things the corn and hogs which the said Edmiston may purchase with the money advanced; and is conditioned, that if the said Edmiston shall refund or pay the five thousand dollars so advanced, with ten per cent. interest thereon, and save the complainant harmless as his security on said hog contract, by delivering the hogs in accordance with the terms of the contract, and also apply all the profits, or enough of them, arising from the hog contract, to the payment of the interest due on the note for $11,000, then the mortgage is to be void. It also stipulates that Edmiston may retain the possession of the hogs purchased until the time for their delivery, and of the other property until the 1st of March, 1860; and if default is made, then the complainant may take possession and sell the property by advertising for ten days, as in constables' sales, and pay the aforesaid indebtedness, and shall refund the surplus to the said Edmiston, if there is any. No memorandum of the property was made by the justice of the peace taking the acknowledgment.

The bill further alleges that the hogs levied upon, which were in the possession of David Edmiston, were hogs purchased with the money advanced by the complainant under said mortgage contract, and that by virtue of said mortgage and contract, he has an equitable lien upon them, and that his rights will be prejudiced by their sale; and prays that the defendants be perpetually enjoined from selling or interfering with said hogs under said execution and levy.

To this bill of complaint, the defendant, Gregg, craves oyer of the mortgage referred to in the bill as an exhibit, and demurs; alleging as a ground of demurrer, that, from the complainant's own showing, he has no equity in his bill, and no legal or equitable title to the property levied upon under said mortgage, as appears from his said bill of complaint and exhibits. The court overruled the demurrer, and the defendant having elected to stand by his demurrer, and answering no further, the court ordered that the injunction be made perpetual, and the defendant forever enjoined from all further proceedings.

To which judgment of the court, in overruling said demurrer and perpetuating said injunction, the defendant at the time excepted, and prosecutes this writ of error.

The errors assigned are, that the court erred in overruling the defendant's demurrer, and perpetuating the injunction.

A. GREEN, for Plaintiffs in Error.

LINCOLN & HERNDON, for Defendant in Error.

BREESE, J. There can be no just pretense of a partnership in this case, for the complainant positively disclaims it in his bill of complaint. The case must stand on other grounds. There would be little difficulty about it, had the mortgage set up in the bill been acknowledged before a district justice of the peace, and recorded in the clerk's office, as the chattel mortgage act requires.

We have examined, with great care, all the cases to which reference has been made on both sides, and we are by no means satisfied that a party cannot mortgage property to be acquired after the execution of the mortgage, provided the mortgage deed is properly executed, acknowledged and recorded, or possession taken of the property before any lien has attached; and that a court of equity will protect the mortgagee where the transaction is fair and honest. The case of *Langton* v. *Horton,* 1 Hare, (23 Eng. Ch. R. 550,) is a strong case in support of the latter position. This was the mortgage of a ship at sea, with her tackle and appurtenances, and all oil; head matter, and other cargo, which might be caught or brought home in such ship. The ship was on her voyage at the time of the assignment; the parties sent notice of the assignment to the master of the ship, and the master delivered up possession of the ship and cargo to the mortgagees immediately after her return from the voyage. The Vice Chancellor, Sir James Wigram, held, that the equitable title of the mortgagees to the cargo was perfected, and could not be defeated by a judgment creditor of

the mortgagor, who afterwards sued out a *fi. fa.*, and proceeded to take the ship and cargo in execution. The Vice Chancellor uses this strong language in giving his opinion : " It is impossible to doubt, for some purposes at least, that by contract, an interest in a thing not in existence at the time of the contract, may, in equity, become the property of a purchaser for value. A tenant, for example, contracts that particular things which shall be on the property when the term of his occupation expires, shall be the property of the lessor at a certain price, or at a price to be determined in a certain manner. And so of contracts relating to mines. He refers to the case of the ship *Wane*, 8 Price, 269, and *Curtis* v. *Auber*, 1 Jacob and Walker, 526, decided by Lord Eldon, as establishing the proposition, that non-existing property may be the subject of a valid assignment. There is reason and good sense in this ; and Mr. Justice Story relies with much confidence upon this case, in deciding the case of *Mitchell* v. *Winslow et al.*, 2 Story, 630, in which he reviews all the authorities. He says : " It seems to me a clear result of all the authorities, that wherever the parties by their contract intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then in *esse* or not, it attaches in equity, as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto under him, either voluntarily, or with notice, or in bankruptcy."

In *Forman* v. *Proctor*, and *Wood, etc.*, v. *Proctor*, 9 B. Monroe, 124, it was held that the interest of a party, in property which he may perfect by the performance of an executory contract, may, in chancery, be the subject of a mortgage or attachment, and if that be in relation to live stock, its natural increase and produce become subject to the mortgage.

The cases from Massachusetts, especially that of *Moody* v. *Wright*, 13 Metcalf, 32, seem to militate against these, but the doctrine of these cases seems a reasonable doctrine, and fit to be recognized by this court. We see nothing in it in conflict with any of the provisions of our chattel mortgage act, or with its spirit and object.

Unfortunately for the complainant, however, his case does not come within their principles—his mortgage was not recorded, and he cannot, therefore, hold the property against the execution. A stipulation that future-acquired property shall be holden as security for some present engagement, is an executory agreement, of such a character that the creditor with whom it is made, may, under it, take the property into his possession

Gregg et al. *v.* Sanford.

when it comes into existence, and hold it for his security, and is a proper subject of transfer by his debtor; and whenever he does so take it into his possession, before any attachment or other lien has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same; but until such an act done by him, he has no title to the same; and that such act being done, and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge. Per Dewey, J., delivering the opinion in the case of *Moody* v. *Wright*, 13 Pick. 32.

The case of *Frost* v. *Willand*, 9 Barbour, 449, to which complainant's counsel has specially referred us, is a strong case, to show that even at law a mortgage of articles to be thereafter manufactured, will be upheld, and the mortgagee protected. The public good requires that contracts of this kind should be supported. When a manufacturer is unable to prosecute his business without aid from others, the industry of the country may be materially promoted by allowing him to pledge his future earnings to those who will make advances to him.

In this case, however, the plaintiffs obtained the actual possession of the barrels as they were manufactured. The defect in the case at bar is, that the mortgage was not recorded, nor was possession taken of the hogs. The demurrer to the bill having been to the merits, and in bar, the decree overruling it, is reversed, and the bill must necessarily be dismissed.

Separate opinion by WALKER, J. While I fully concur in the decision in this case, I am clearly of the opinion that this mortgage contravenes both the letter and spirit of the chattel mortgage law. That in equity no lien could attach as against third persons, until the property had been acquired by the mortgagors, and had also been reduced to possession by the mortgagee, and that a levy of an execution, intervening the purchase by mortgagors, and the acquisition of its possession by the mortgagee, should hold it free from the mortgage, it being fraudulent as against creditors, and the statute not having been complied with in its execution.

CATON, C. J. I concur in the above views.

*Bill dismissed.*