## William Borden

v.

## Catherine M. Croak, Admx.

*Filed at Ottawa November 26, 1889.*

1. Lien—*created by contract—after-acquired property—a lease construed, etc.* Where a landlord seeks to establish a lien on the goods and chattels of his deceased tenant for rent, under a provision in the lease not sufficient to give such lien on after-acquired property, the burden of proving the facts necessary to establish the lien will be upon the landlord, and in the absence of proof that the tenant was the owner of the property claimed to be affected by the lien, at the time he accepted the lease, it will be assumed, as against the landlord, that the goods left by the tenant at his death were all after-acquired property, and not subject to the lien given.

2. A clause in a lease of a store building, that the lessor shall have a right of distress, "and also a valid and first lien for said rent accruing or to accrue, upon the property of the person or persons liable therefor," is void for uncertainty as to the property intended to be incumbered, even as to the property owned by the tenant at the date of the lease, and, *a fortiori,* void, as applied to after-acquired property. Under such lease no lien can be enforced as against after-acquired property of the tenant.

3. The language of the clause given had no application to after-acquired property of the lessee, and it is to be considered that he, speaking, at the date of the lease, of his "property," referred to the property he then had, and nothing more.

4. In giving a lien upon property to secure the payment of money, if the parties intend that the security shall extend to subsequently acquired property, that intention should be clearly expressed.

5. A contract for the sale or mortgaging of subsequently-acquired chattels will not be enforced, in equity, where no chattels are specifically described, as, where the only description is that contained in the general word "property." The equitable title to goods, as well as to land, is confined to specific property, and does not extend to goods which are undetermined.

6. Chattel mortgage—*after-acquired property—the rule at law, and in equity.* At the common law, a mortgage can operate only on property actually in existence at the time of giving the same, and then actually belonging to the mortgagor, or *potentially* belonging to him as an incident of other property then in existence and belonging to him.

7. A different rule prevails in equity. There, while the mortgage itself does not pass the title to such property, it creates in the mortgagee an equitable interest in it, which will prevail even against judgment creditors and others, although the mortgagee has not taken possession of the property, and the mortagor has done no new act to confirm the mortgage. The ground of this doctrine is, that the mortgage, though inoperative as a conveyance, is operative as an executory agreement, which attaches to the property when acquired, and in equity transfers the beneficial interest to the mortgagee, the mortgagor being regarded as a trustee for him, in accordance with the maxim that equity considers that as done which ought to be done.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Messrs. WILSON & MOORE, for the appellant:

A contract for a lien on property thereafter to be acquired will be treated as in force when the property is acquired, without possession. *Holroyd* v. *Marshall,* 10 H. L. Cas. 191; *McCaffrey* v. *Woodin,* 65 N. Y. 459; *Whiting* v. *Eichelberger,* 16 Iowa, 422; *Pennock* v. *Coe,* 23 How. 117; *Hughes* v. *Wheeler,* 66 Iowa, 641.

The following descriptions of property in mortgages were held good: "All the stock I may own during the existence of this mortgage." (*Hughes* v. *Wheeler,* 66 Iowa, 641.) "All the lands owned by the mortgagor." (*Leslie* v. *Munich,* 99 Ind. 180.) On "my entire crop of cotton and corn of the present year." *Ellis* v. *Marton,* 60 Ala. 394.

In numerous other cases it is said, in general, that, as between the immediate parties to the mortgage, a specific description of the several articles mortgaged, to identify them from other like articles of the mortgagor, is unnecessary. *Leighton* v. *Stuart,* 19 Neb. 546; *Call* v. *Gray,* 37 N. H. 498; *Fletcher* v. *Morey,* 2 Story, 550; *Mitchell* v. *Winslow,* id. 630; *Webster* v. *Nichols,* 104 Ill. 178.

The administratrix is a mere volunteer, and takes the property of the deceased subject to all equities and claims that

existed against it in the hands of the deceased. *Webster* v. *Nichols*, 104 Ill. 178; *Sumner* v. *McKee*, 89 id. 132.

Messrs. Young & Makeel, for the appellee:

Appellant's right to a lien on the goods was only inchoate. It required the levy of a distress to make it a vested lien. *Speer* v. *Skinner*, 35 Ill. 304; *Ruah* v. *Ritchie*, 1 Bradw. 188; *O'Hara* v. *Jones*, 46 Ill. 288; *Thompson* v. *Mead*, 67 id. 395; *Mead* v. *Thompson*, 78 id. 63; *Hadden* v. *Knickerbocker*, 70 id. 678; *Herron* v. *Gill*, 112 id. 252; *Rowland* v. *Hewitt*, 19 Bradw. 451.

The lien claimed is not such as can be enforced against the administrator, even if good as between the parties to it. *Sumner* v. *McKee*, 89 Ill. 127.

Mr. Justice Bailey delivered the opinion of the Court:

William Borden filed his petition in the Probate Court of Cook county, in the matter of the estate of Thomas F. Croak, deceased, representing that by the provisions of a certain lease executed by the petitioner to said Croak, in his lifetime, the petitioner was entitled to a valid and first lien upon all the goods and property of said Croak that might at any time during the term of the lease be situated in or upon the demised premises, for any rent accrued or to accrue, together with all costs and expenses of collecting the same, and praying to be allowed his claim for $250 for rent alleged to be in arrears, and that the same should be declared to be a first lien upon a stock of goods and merchandize kept by the lessee on said premises, in his lifetime, and that the administratrix be ordered to pay the same out of the moneys arising from the sale of said stock of goods. The Probate Court, on the hearing of said petition, found that the petitioner was entitled to a first lien on said goods as therein alleged, and ordered the administratrix to pay him said sum of $250 out of the proceeds thereof. On appeal to the Circuit Court, a hearing was had,

resulting in an order declaring that the petitioner was not entitled to any preference or priority over any of the other creditors of said estate, and that he had no lien on the assets in the hands of the administratrix, but allowing his claim for $250 as a claim of the seventh class, to be paid in due course of administration. This order was affirmed by the Appellate Court on appeal, and the judges of that court having certified that the case involves questions of law of such importance, on account of principal and collateral interests, that it should be passed upon by this court, the record is now brought here by a further appeal.

The facts upon which the hearing in the Circuit Court was had appear by stipulation, and, so far as they are material to the questions arising upon the present appeal, are, in substance, as follows : Said Croak, in his lifetime, was a merchant tailor, and was occupying, for the purpose of carrying on that business, a room in the Borden Block, Chicago, under a lease from the petitioner. Said lease was dated February 15, 1886, and demised to said Croak, for the term of one year, commencing May 1, 1886, the store in Borden Block known as number 101, Randolph street, to be used for a merchant tailoring store. The rent reserved was $1500, payable in equal monthly installments in advance, on the first day of each and every month during said term. Among the various provisions of said lease was the following :

"The party of the first part, his heirs, executors, administrators or assigns, shall have, at all times, the right, upon request, to enter upon said demised premises to inspect their condition, and also to make any needful repairs or alterations which said party may desire or see fit to make, and also have a right of distress, and also a valid and first lien for said rent accruing or to accrue, upon the property of the person or persons liable therefor, and also for the damages for the breach of any of the covenants herein contained, and the expenses, including attorney's fees, incurred in enforcing the same, and

which are to be repaid to said first party, and which may be included and allowed in the suit as part of the damages."

Said Croak died June 3, 1886, and the appellee having been appointed administratrix of his estate, advertised for the presentation of claims, and claims were presented to the amount of $3522.90, not including the claim of the petitioner for rent, and the appraisers allowed the appellee, as the widow of the deceased, the sum of $2410 as her widow's award. On the 14th day of June, 1886, said administratrix filed her petition for an order to sell all the goods and chattels belonging to said estate for the payment of debts, and on the same day the Probate Court entered an order as prayed for, and thereupon the administratrix at once removed from the demised premises the stock of merchandize belonging to the deceased, and sold and converted it into money, realizing therefor the sum of $1357. The remaining chattels belonging to said estate were also sold for sums which, added to the proceeds of the stock of goods, amounted to $1565.10. On the 7th of September, 1886, the administratrix made due report of said sale, and on the same day, by order of the Probate Court, ·said report was approved.

All the rent of said premises accruing prior to June 1, 1886, was paid by said Croak in his lifetime. The petitioner claims only for the rent reserved for the months of June and July, 1886, he having accepted a surrender of the demised premises and rented them to another tenant about September, 1886, and having expressly waived his claim for rent for the month of August, 1886. The petitioner's right to recover rent for said months of June and July is not contested.

The only question arising upon the record is, whether, by the terms of said lease, the petitioner acquired a first lien upon said stock of merchandize, by virtue of which he is now entitled to payment out of the proceeds of said goods in preference to the other creditors of the estate. There is however no evidence that any portion of the goods which came into the

hands of the administratrix were owned by her intestate at the date of the lease. If any inference on that subject is to be drawn from the admitted facts, it is in favor of the theory that said goods were purchased and acquired by said intestate after that date. The burden of proving the facts necessary to the establishment of the lien is clearly upon the petitioner, and in the absence of proof that the intestate was the owner of said property at the time he took the lease, it will be assumed, as against the petitioner, that it is all after acquired property. The question then is narrowed down to whether the provisions of the lease are sufficient to vest in the lessor such lien upon after acquired property as will enable him to pursue the proceeds of such property into the hands of the lessee's administratrix.

It may well be doubted whether the terms of the lease are not too general and uncertain to create a valid lien even upon the property owned by the lessee at the time that instrument was executed. The attempt was to create a valid and first lien for the rent "upon the property of the person or persons liable therefor." No particular property or class of property is described, nor is the description limited to personal property. The word used would seem to apply indiscriminately and with equal appropriateness to every species of property of the lessee, whether real, personal or mixed, of whatever character or wherever situated. Such description may well be held to be void for uncertainty even when applied to property owned at the time, and, *a fortiori*, may it be held to be void when applied to after acquired property.

It can not be said, however, that the language of the lease has any application to after acquired property. In interpreting the words of an instrument, we should view them from the position, both as to time and circumstances, in which the parties stood when they used them. The lessee, speaking at the date of the lease, of his "property," manifestly refers to the property he then owned, and nothing more. If at that time

he had executed an instrument conveying, assigning or mortgaging his "property," without qualifying words, no one would for an instant suppose that he was attempting to dispose of his future acquisitions. How then can it be said that an instrument by which he attempted to create a lien upon his "property," without words indicating an intention to subject to the lien his future acquisitions, can have any broader application?

The case of *Tapfield* v. *Hillman*, 6 Man. & Grang. 245, is in point. There a lessee executed to his lessor by way of mortgage an assignment of the furniture and stock in trade in, about, upon and belonging to an inn, with a power, upon non-payment, to enter into, possess, hold and enjoy the inn for the residue of the assignor's term, and "to take, possess, hold and enjoy all the goods, chattels, effects and premises," and it was held that nothing passed but what was in, upon or about the inn at the time of the assignment, Tindall, C. J., saying: "If the intention of the parties was that the security should extend to subsequently acquired property, that intention should have been clearly expressed." See also *Phillips* v. *Both*, 58 Iowa, 499; Jones on Chattel Mortgages, sec. 173 a.

But even if the description in the lease could be held to include subsequently acquired property, it is not sufficiently definite and certain to create a lien thereon. The lièn claimed is one where the property is left in the possession of the debtor, and it is therefore in the nature of a mortgage rather than a pledge, and is to be governed by the rules of law applicable to chattel mortgages. At common law a mortgage can operate only on property actually in existence at the time of giving the mortgage, and then actually belonging to the mortgagor, or potentially belonging to him as an incident of other property then in existence and belonging to him. Jones on Chattel Mortgages, sec. 138, and authorities cited. Where the mortgage contains the power of seizure on default—and the right to distrain stipulated for in the present lease may be regarded

as giving such power of seizure—the execution of such power may give effect to a mortgage of subsequently acquired property, not only as between the parties, but also as against third parties claiming under the mortgagor. Id. sec. 160 et seq.

A different rule, however, prevails in equity. There, while such mortgage itself does not pass the title to such property, it creates in the mortgagee an equitable interest in it, which will prevail, even against judgment creditors and others, although the mortgagee has not taken possession of the property, and the mortgagor has done no new act to confirm the mortgage. The ground of the doctrine is, that the mortgage, though inoperative as a conveyance, is operative as an executory agreement, which attaches to the property when acquired, and in equity transfers the beneficial interest to the mortgagee, the mortgagor being regarded as a trustee for him, in accordance with the familiar maxim, that equity considers that as done which ought to be done. Id. sec. 170.

This doctrine is fully and elaborately considered in the leading case of *Holroyd* v. *Marshall*, 10 H. L. Cas. 191, and in discussing it, Lord Chancellor Westbury says: "It is quite true that a deed which professes to convey property which is not in existence at the time of the conveyance is void at law, simply because there is nothing to convey. So, in equity, a contract which engages to transfer property not in existence can not operate as an immediate alienation, merely because there is nothing to transfer. But if a vendor or mortgagor agrees to sell or mortgage property, real or personal, of which he is not possessed at the time, and he receives the consideration for the contract, and afterwards becomes possessed of property answering the description in the contract, there is no doubt that a court of equity would compel him to perform the contract, and that the contract would, in equity, transfer the beneficial interest to the mortgagee or purchaser immediately on the property being acquired. This, of course, assumes that the supposed contract is one of that class of which a court of

equity would decree a specific performance." See *Gregg* v. *Sanford*, 24 Ill. 17; *Webster* v. *Nichols*, 104 id. 160; *McCaffrey* v. *Woodin*, 65 N. Y. 459.

The question then is, whether a contract for the sale or mortgaging of subsequently acquired chattels will be specifically enforced in equity, where no chattels are specifically described, the only description being that contained in the general word "property." It is undoubtedly the rule, that the equitable title to goods as well as to land, is confined to specific property, and does not extend to goods which are undetermined. As said by the Lord Chancellor in *Holroyd* v. *Marshall*, *supra:* "A contract for the sale of goods, as, for example, of five hundred chests of tea, is not a contract which would be specifically performed, because it does not relate to any chests of tea in particular; but a contract to sell five hundred chests of the particular kind of tea which is now in my warehouse is a contract relating to specific property, and which would be specifically performed."

In *Tadman* v. *D'Epineuil*, 20 L. R. Chan. Div. 758, a party, by a written instrument, charged "all his present and future personalty" to secure future indebtedness to the plaintiff, and afterwards became indebted to him, and upon the principles laid down in *Holroyd* v. *Marshall* it was held, that the instrument operated to charge all the personal property belonging to the debtor at the date of the instrument, but did not operate to charge subsequently acquired property. In *Belding* v. *Reed*, 3 Hurl. & Colt. 955, a debtor assigned to his creditor by bill of sale all his household furniture, plate, linen, etc., and all his other personal estate and effects whatsoever, then being or thereafter to be upon or about his dwelling house, farm or premises, or elsewhere in Great Britain, upon trust to sell and satisfy his debt. Power was given the creditor to enter the premises where the goods assigned might be, and take possession thereof, but it was provided that until he should see fit to do so, the debtor might retain possession. After five years,

the debtor having in the meantime become a bankrupt, the creditor, after having demanded payment, entered and, with other goods of the debtor, seized goods which the debtor had acquired subsequent to the execution of the bill of sale. In an action of trover by the assignee in bankruptcy, it was held that, as the goods were not identified by the bill of sale, the creditor took no title to them, and that the action might be maintained.

The rule established by the foregoing authorities and which we are disposed to adopt does not, in our opinion conflict with the previous decisions of this court to which our attention has been directed. Thus, in *Webster* v. *Nichols, supra,* the after acquired property which was held to be within the lien created by the provisions of the lease consisted of certain buildings and improvements put upon the demised premises by the tenant, and which were described in the lease as such, and were thus precisely identified. The other cases cited do not seem to involve the principle here under discussion, and therefore need not be particularly noticed.

Upon the trial a number of propositions submitted by the petitioner were held by the court as the law in the decision of the case. Some of those propositions were, in our opinion, more favorable to the petitioner than was warranted by the rules of law applicable to the case. The position seems to be now taken by counsel for the petitioner, that, because the appellee has not challenged the soundness of the propositions so held by cross errors, such propositions must be conclusively held as the law of the case, and that it was not open to the Appellate Court, and is not open to this court, to review them, or to hold that the law applicable to the case is different from that established by the propositions thus adopted. The position thus taken is obviously unsound. The question here is, whether the trial court, upon the facts presented and the rules of law applicable thereto reached a correct judgment. The mode of reasoning upon which he proceeded is immaterial.

So long as the conclusion is right, it can not be impeached by showing that the court proceeded upon erroneous principles in reaching it. The errors of the trial court were errors committed at the instance and in favor of the appellant, and such errors manifestly can not be set up as a ground for reversing the judgment. The case is not different from one where a trial court instructs the jury more favorably for the defeated party than the law will warrant. A judgment will never be reversed for errors committed at the instance or in favor of the party seeking the reversal.

We find no error in the record, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*