In the Matter of the Estate of Harry H. Schwarz, Deceased.
Central National Bank of Mattoon, as Administrator of the Estate of Harry H. Schwarz, Deceased, Petitioner-Appellee, v. Jessie M. Schwarz, Schilling Funeral Home, W. K. Kidwell, et al., Claimants, Jessie M. Schwarz, Claimant-Appellant.

Gen. No. 10,765.

Fourth District.

November 3, 1966.

Lemna & Lee, of Tuscola, for appellant.

Craig & Craig, of Mattoon (Craig Van Meter, of counsel), for appellee.

CRAVEN, J.

Jessie M. Schwarz appeals from a determination that she must participate in the assets of her deceased former husband's insolvent estate pro rata with other seventh-class claimants to satisfy her claim for the balance due her for $45,000 alimony in gross under a decree of divorce as modified by the Supreme Court of Illinois and by contract with the decedent dated June 20, 1963.

Claimant contends that this determination of the trial court was error. First, she contends that an award of alimony in gross creates a vested right which entitled her to payment ahead of general creditors, and second that she and her late husband entered into an agreement which created an equitable lien upon his entire property which is enforceable against his heirs, personal representatives and creditors who had notice thereof.

The factual matters giving rise to this appeal are not in dispute, only their consequences. Jessie M. Schwarz and the decedent were married in 1926. Their marriage was terminated on November 8, 1961, by decree of the circuit court of Coles County, which provided in part that in addition to specific property to be conveyed to her, she was to receive as alimony and support the sum of $130,310 payable over a nine-year period of time in monthly installments of $1,206.50. Her late husband appealed the terms of this decree as it purported to impose a lien against his personal property for the unpaid balance from time to time remaining. The Supreme Court of Illinois (27 Ill2d 140, 188 NE2d 673 (1963)) held that the sum provided was alimony in gross but the decree was improper insofar as payments owed in the future could constitute a lien on his personal property.

Subsequent to this decision, negotiations occurred which culminated in a contract dated June 20, 1963, be-

116

tween claimant and the decedent. This contract was filed of record in the divorce proceedings. By its terms she accepted the sum of $90,000 as a full and complete substitute for the payments provided by the divorce decree, to be paid $30,000 down and the remaining $60,000 in equal installments of $500 per month beginning July 1, 1963, "with the express provision that said payments shall be accelerated at anytime so that the entire sum of $60,000 shall be paid within Nine (9) years from the date of December 1, 1961."

Additional pertinent parts of this contract were:

"5. This Agreement shall not be considered as in manner [sic] modifying the Decree of Divorce, but the acceptance of a lesser sum by said JESSIE M. SCHWARZ is regarded by the parties herein as a compromise with regard to the payment of alimony and support, and in all other respects the said Divorce Decree, as modified by the Illinois Supreme Court, shall be regarded as binding upon these parties.

"6. The obligation to pay as set forth herein shall be regarded as a lien upon any and all property chattels and estate of said HARRY H. SCHWARZ and in the event that said HARRY H. SCHWARZ should default in payment, then the said JESSIE M. SCHWARZ may declare this contract as breached and forfeited, and she may then revert back to the provisions of the Divorce Decree as modified by the Illinois Supreme Court, and proceed fully under the provisions of said Decree, or any other rights which she might have acquired by reason of said Decree or this Agreement."

Harry H. Schwarz died intestate in Coles County and the Central National Bank of Mattoon was appointed administrator of his estate. The present claim of $45,000 is the balance due after deduction of the payments made

117

between June 20, 1963, and the date of death. Under court order, the administrator liquidated the assets of decedent's business and is holding the proceeds pending a determination of this appeal. The assets of the estate are insufficient to pay all claims against the decedent in full.

The administrator asserts that the decision of the trial court below was correct and should be affirmed because (a) the unpaid installments of the alimony in gross award are not a preferred claim against the estate but a seventh-class claim, and (b) the contract does not succeed in creating an equitable lien in spite of the intention of the parties to do so because (1) the language used to describe the property to which the lien is to attach is uncertain and indefinite in its description and (2) the lien claimant failed to prove that the property sold by the administrator was not after-acquired property of the decedent.

██ The administrator's position is well taken. The vesting of a right to alimony in gross means only that the right to receive payment in the ordinary course of administration of decedent's estate is protected as a seventh-class claim. Ordinary alimony is not awarded in a sum certain but on a continuing basis into the uncertain future. The obligation to pay ceases upon death or remarriage of the recipient, or death of the payor. Section 18 of an Act to revise the law in relation to divorce (approved March 10, 1874) as amended (Ill Rev Stats 1965, c 40, para 19).

██ Alimony in gross is certain in amount and in time of payment and is awarded in lieu of an uncertain, continuing obligation to provide support for the former spouse. Walters v. Walters, 409 Ill 298, 99 NE2d 342 (1951). In this sense only is alimony in gross a vested interest. Death of the person obligated to pay does not

extinguish the obligation to pay any unpaid installments not then due. Kohler v. Kohler, 31 Ill App2d 151, 175 NE2d 603 (1st Dist 1961). ILP, Divorce, § 149. The claim for such unpaid alimony in gross is a charge against the obligor's estate but has no standing as a preferred claim over other obligations of the decedent. As such, we can only conclude that such a claim is a seventh-class claim when presented in the course of administration of the estate of the obligor.

The Supreme Court held, in the proceedings involving this claimant and the decedent, that the award of alimony in gross per se did not create a lien on the decedent's personal property. That court also decided that the trial court could not, by specific decree, create a lien on personal property to secure its payment.

Recognizing that her former husband had no real estate holdings, and realizing that his ability to pay the sums she agreed to accept by contract in lieu of the court award depended upon his business which employed personal property for the production of income, claimant tried to acquire by contract what she could not obtain by court decree—a lien on her husband's personal property. Had the contract employed the requisite language to comply with the formal requirements for such a lien, we would be faced with the question of the enforceability of this contractual lien under circumstances where a court decree could not confer such a right. We are not required to decide this question, however, since the language employed in this contract is not sufficient to create the lien.

■ ■ An equitable lien must operate on specific property. The words used to describe the property subject to the lien, "any and all property, chattels and estate," are void for uncertainty. They describe no particular property, and apply indiscriminately and with equal appropriateness to every species of property of the

119

decedent. See Borden v. Croak, 131 Ill 68, 22 NE 793 (1889); Chicago Title & Trust Co. v. Fine Arts Bldg., 288 Ill 142, 123 NE 300 (1919).

■■ The purported lien created would not attach to decedent's after-acquired property in the absence of specific language giving notice to potential suppliers of chattels of the possibility of such lien. The burden of proving that the proceeds to be used to satisfy the lien did not result from the sale of such after-acquired property was upon the claimant. Borden v. Croak, 131 Ill 68, 22 NE 793 (1889).

This record is devoid of evidence tending to show the dates of acquisition by decedent of property sold by the administrator in relation to June 20, 1963, when the contract was signed. The business carried on by decedent appeared to be in the nature of a wholesale auto supply company which, by its very nature, gives rise to an inference that a share of the goods in possession of decedent's business at the date of his death was purchased and acquired in his ordinary course of business after he signed the contract with the claimant.

For the above and foregoing reasons, the judgment of the circuit court of Coles County, Illinois, is affirmed.

Affirmed.

TRAPP, P. J. and SMITH, J., concur.