RUTH L. OLSON, Plaintiff-Appellant, *v.* ARTHUR L. OLSON *et al.*, Defendants.—(ILENE LOUISE OLSON, Ex'r of the Estate of Arthur L. Olson, Deceased, *et al.*, Defendants-Appellees.)

Third District   No. 77-325

Opinion filed March 28, 1978.

Stanley L. Tucker, of Hartzell, Glidden, Tucker & Neff, of Carthage, and Richard Rasmussen, of LaHarpe, for appellant.

Lyman R. Fort, of Stronghurst, and James R. Standard, of Monmouth, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Ruth Olson, sought an order from the circuit court of Henderson County requiring the circuit clerk, as a trustee, to continue making monthly alimony payments to plaintiff. The monies deposited with the circuit clerk as trustee were the result of a settlement agreement between plaintiff and her husband, Arthur Olson, now deceased. The circuit court of Henderson County ordered the balance of the funds

deposited with the clerk to be paid over to the estate of Arthur L. Olson and plaintiff appealed.

Plaintiff and Arthur L. Olson were divorced on May 15, 1972. The decree entered on that day reserved matters of alimony and property for future consideration. On July 6, 1972, after further hearings, the trial court entered an order disposing of all matters reserved. On November 21, 1972, plaintiff and her former husband entered into an agreement styled "Property Settlement to Avoid Appeal." A consent decree was entered which vacated the order of July 6, 1972, approved the agreement and incorporated the agreement into the consent decree. Various provisions of the agreement are at the heart of the present dispute. The property settlement provides in part:

"Division A. *ALIMONY FOR WIFE*

1. Arthur L. Olson shall pay to Ruth L. Olson as and for her allowance for support and maintenance (being alimony) the sum of $300.00 per month for a period of ten years beginning August 1, 1972, and payable on the first day of each month thereafter for a period of the said ten years, provided, however, the obligation of Arthur L. Olson to pay such alimony shall cease and terminate upon the death or remarriage of Ruth L. Olson during said ten year period. In the event the said Arthur L. Olson dies within said ten year period, then the obligation to pay alimony shall be a lawful claim against his estate and his personal representative is hereby authorized and directed to consent to the allowance of a claim against his estate for any alimony which has not accrued.

2. Subject to the provisions of Sub-paragraph 1 of Division A hereinabove, the said Arthur L. Olson further agrees with the said Ruth L. Olson that if he shall hereafter liquidate all his real estate and business interests (now or hereafter owned by him) or if he shall liquidate more than one-half of the value of his said real estate and business interests (now or hereafter owned by him) * * * and if upon said liquidation he does not receive in cash the sale or transfer valuation but is to receive same in installments, then the said Arthur L. Olson agrees to deposit with said clerk [clerk of the circuit court of Henderson County, Illinois] in said cause, upon such liquidation, the sum of $15,000 if the unaccrued alimony exceeds that amount, * * *; and if a $15,000 deposit is made, he will, upon the full distribution thereof by said clerk, deposit an additional sum of money equal to the amount of unaccrued alimony as of the date of the depletion of said $15,000 deposit.

It is mutually agreed between these parties that any deposit made by the said Arthur L. Olson shall be by the said clerk invested in securities unconditionally guaranteed by the United

States of America or deposited at interest in some financial institution in Illinois whose deposits are federally insured; and the clerk shall dispurse the principal of the deposit or deposits and interest thereon to Ruth L. Olson as alimony in installments as provided in Sub-Paragraph 1 hereinabove; that any money so deposited or interest thereon which is not required under the terms of Sub-paragraph 1 hereinabove shall be by Clerk refunded to the said Arthur L. Olson or his personal representative or successor in interest."

During 1973, it appears that one of the contingencies specified in paragraph 2 occurred. Pursuant to plaintiff's petition, the trial court entered an order on July 24, 1974, finding Arthur Olson in contempt and requiring him to deposit $15,000 with the clerk of the circuit court. After Arthur Olson deposited $15,000 with the clerk, the court entered an order on August 22, 1974, which required the clerk to deposit the money in interest bearing accounts and certificates of deposit in a named bank with the accounts and certificates of deposit bearing the title, "Arthur Olson, trust, David Painter, Clerk as trustee." Between the date the trust was established and November 1976, the clerk paid plaintiff $300 monthly. In November 1976, Arthur Olson died and since his death the clerk has refused to make any further payments.

Plaintiff filed a motion requesting that the clerk of the circuit court be ordered to continue making alimony payments to plaintiff from the trust fund. The trial court held that the fund was to be considered an asset of the estate. Subsequent to receiving notice of plaintiff's motion for continued alimony payments, the clerk of the circuit court of Henderson County and the executor of the estate of Arthur Olson appeared and are parties to this appeal.

Plaintiff argues that under the provisions of the settlement agreement set forth previously, she is entitled to receive monthly payments of $300 from the fund regardless of the occurrence of the death of Arthur Olson between August 1972 and August 1982. She contends that under paragraph 1 of the property settlement, plaintiff has the right to claim alimony against the estate of Arthur Olson for the initial 10-year period to the extent that alimony is not secured by the fund.

Defendant claims the alimony awarded to plaintiff under the property settlement agreement was periodic alimony and not alimony in gross. As such, defendant reasons that it was within the discretion of the trial court to modify an award of periodic alimony. We find defendant's arguments unpersuasive.

■■ Defendant's argument fails to comprehend the significance of a property settlement agreement. The purpose of a settlement agreement is not to provide a means for first determining whether alimony is in gross or

periodic in form and then to proclaim that due to the in gross or periodic character of the alimony, certain rights and consequences exist. Rather, the purpose of a settlement agreement is to establish the rights and duties of the parties to the agreement in the first instance. It is those vested rights, freely given by each party, which must control. Only if the agreement, when taken as a whole, fails to sufficiently define those rights and duties is it necessary or indeed justifiable to determine the form of alimony involved and the corresponding rights and duties which the law prescribes for that form.

■■ Perhaps the best statement concerning the significance of a property settlement is contained in *Guyton v. Guyton*, 17 Ill. 2d 439, 444-45, 161 N.E.2d 832, 835, wherein the court stated:

"The law looks with favor upon the amicable settlement of property rights and is reluctant to disturb decrees based thereon. (*Walters v. Walters*, 409 Ill. 298.) It has long been settled that parties to a divorce suit may voluntarily adjust their property interests and the amount, if any, to be paid as alimony; and that when such agreements are made a part of the decree the parties are concluded thereby. *Storey v. Storey*, 125 Ill. 608; *Buck v. Buck*, 60 Ill. 241."

The negotiations culminating in the present property settlement agreement were undertaken to avoid a costly appeal and the parties to that agreement are to be commended for resolving their differences without resort to further litigation. By this agreement, the parties intended to create certain vested rights in one another and if those rights can be determined with certainty, it is the policy of our courts to give effect to those rights. (See *Buck v. Buck*, 60 Ill. 241; *Roberts v. Roberts*, 90 Ill. App. 2d 184, 234 N.E.2d 372.) As we interpret the agreement, it clearly contemplates that once the fund was created with the clerk, payments from the clerk to the plaintiff out of that fund would continue after Arthur Olson's death.

■■ In interpreting written agreements, the court should adopt an interpretation which gives effect to all language in the agreement. Interpreting this agreement to require the monies deposited with the clerk to be given to the estate and limiting plaintiff solely to filing a claim for alimony against Olson's estate would ignore the clear import of part of paragraph 2. The last sentence to paragraph 2 provides "that any money so deposited or interest thereon which is not required under the terms of Sub-Paragraph 1 hereinabove shall be by the clerk refunded to the said Arthur L. Olson or his personal representative or successor in interest." We think such language would be unnecessary unless the parties intended payments to continue after the death of Arthur Olson. When this language is read and interpreted in conjunction with the remainder of the

agreement, we believe it becomes apparent that it requires the clerk to make the $300 monthly payments under paragraph 1 until either the fund is exhausted or the payments are completed, regardless of the demise of defendant's former husband. If the fund is insufficient to continue paying plaintiff $300 per month until August 1982, plaintiff may claim any resulting deficiency from the decedent's estate.

Accordingly, the judgment of the circuit court of Henderson County is reversed and the cause remanded with directions to enter an order consistent with the views expressed herein.

Reversed and remanded with directions.

BARRY, P. J., and ALLOY, J., concur.