RONALD JOHN PACIONE, Respondent-Appellant, *v.* DARLENE JOY PACIONE, n/k/a Darlene Joy Reed, Petitioner-Appellee.

Third District   Nos. 79-342, 79-435 cons.

Opinion filed March 14, 1980.

Timothy J. Howard, of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellant.

Jay H. Janssen and Jerelyn D. Maher, both of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The two appeals which have been consolidated at bar arise from post-decree petitions involving the nature of certain periodic payments from Ronald John Pacione (hereinafter Ronald) to his former wife, Darlene Joy Pacione Reed (hereinafter Darlene), arising from the provisions of their marital settlement agreement. The first petition was filed by Darlene for rule to show cause why Ronald should not be held in contempt of court for failing to maintain the scheduled payments. The second petition was filed by Ronald for modification of decree for divorce based upon a substantial change in circumstances. The circuit

court of Peoria County ordered Ronald to resume the payments, submit a plan for the payment of arrearages, and denied his petition for modification.

The periodic payments in question arise from the second article of the parties' marital settlement agreement, entitled "Allowance for Wife," and incorporated into the decretal section of their decree for divorce entered September 10, 1976. That article provides as follows:

"1. RON shall pay to DARLENE as and for her allowance for support and maintenance the amount of $150.00 per week beginning on the first Monday following the entry of a Decree for Divorce and continuing thereafter on the Monday of each succeeding week until the payments terminate as herein provided.

2. The payments made by RON to DARLENE for her allowance shall continue until the first to happen of the following:

(a) The expiration of a period of 121 months:

(b) The intervening prior death of RON, in which event the allowance to DARLENE to be paid during the 121 month period in weekly installments shall be paid in cash within 90 days of RON's death, such cash payment to be discounted to its present value at the rate of 7-½%.

3. All of the payments to be made by RON to DARLENE pursuant to this Article will be payments in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by RON under a written instrument incident to a divorce, all within the meaning and intendment of Section 71(a) and 215 of the Federal Internal Revenue Code of 1954, as now in effect, and of any similar provisions of future laws, and that such payments will be includible in DARLENE's gross income pursuant to Section 71(a) and will be deductible by RON pursuant to said Section 215 in determining their respective taxable income."

Approximately 20 months after entrance of the decree, this cause was first redocketed as the above payments were in arrearage. At that time, the trial court enjoined Ronald from conveying the parties' formal marital residence, which had previously been awarded to him in the agreement. The following month, Ronald filed for bankruptcy, individually and for his 17-year-old insurance agency. Characterizing the periodic payments as part of the parties' property settlement, he listed Darlene as an unsecured creditor and was discharged in bankruptcy on July 18, 1978. Darlene responded by filing the first of the petitions at bar, and Ronald moved to dismiss as the obligation had been discharged in bankruptcy. Finding an ambiguity in the language of the agreement, the trial court denied the motion to dismiss and ordered an evidentiary hearing on the

question of intent, a procedure to which no error is assigned. Holding that the parties treated the payments as both maintenance and property settlement and that no intent was evidenced as to dischargeability, the court ordered the payments resumed and brought up to date.

Ronald responded by filing the second petition at bar, requesting the elimination of the periodic payments. After a hearing, the trial court held that the payments constituted alimony in gross and that any change in Ronald's circumstances was consequently immaterial. Finding that "[s]ubsequent statutory changes are, to this decree, prospective only and not retroactive," the court denied the petition. Ronald was subsequently ordered to pay 20 percent of his gross monthly income toward the elimination of his arrearages and perfected the appeals at bar.

The interpretation and construction of an alimony provision by the trial court, in light of all the surrounding facts as disclosed in the record, will not be set aside unless contrary to the manifest weight of the evidence. (*Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.) Our first task is thus to determine whether the trial court's construction of the periodic payments is manifestly erroneous.

The evidence considered by the trial court in the determination of the parties' intent included the agreement itself, the parties' testimony, and the parties' treatment of the payments. Considering first the agreement itself, we note the payments were characterized as "for support and maintenance," were taxable to Darlene and deductible by Ronald, and were the subject of an entire article of the agreement entitled "Allowance for Wife." The decree of divorce refers to "the specific provisions for the division of property and periodic payments" using the disjunctive, and the following article of the agreement is entitled "Property Settlement," provides for Ronald's retention of his business interests and a division of other real and personal property, and contains no reference to the subject payments. While these factors evidence an intent that the payments be in the nature of alimony, we note further that a lump sum payment was mandated in the event of Ronald's death, a characteristic evidencing an intent that the payments be in the nature of a property settlement, settlement in lieu of alimony, or alimony in gross. The agreement is silent as to the effect of Darlene's remarriage upon her right to continue to receive payments.

The parties' testimony also evidences a divided intent. While the understanding that the payments would not terminate in the event of Darlene's remarriage or be modified in any event was shared by the parties, they differed as to their understanding of the nature of the payments. Darlene believed she was receiving alimony and testified the payments were "just for support and so I could live." We note her understanding of the lump-sum provision:

"Q. Do you recall who requested that these payments be a charge against the estate of Ron upon his death?

A. I knew he wouldn't pay it, and I told my attorney this at the time. I said, He'll set this up and he won't pay it. He says, We'll put it in the decree so he'll have to pay it. And that's the only way I thought it was guaranteed that it—but it wasn't. Because I knew he would never pay bills, and I knew he wouldn't pay me."

Ronald believed he was paying a property settlement obligation and explained:

"A. That what—how we determined the divorce and the payment. That's how we come to—our hassle was completely over nothing but the property and what we were to pay, what we were to settle on. She wanted the cash settlement, and I didn't want to liquidate all my property, and she understood this, and that's how we determined the amount of money that we did, I thought.

Q. So it was your opinion it was part of a property settlement agreement, the agreement for periodic payment and transfer of property?

A. Yeah, our assets compared to our liabilities, and we came up with a net figure, and that's what we went by, and she agreed upon the weekly settlement."

The parties' treatment of the payments also evidences this hybrid intent. Darlene has included each payment in determining her income for tax purposes and Ronald enjoyed the corresponding tax deduction. In the bankruptcy proceeding, however, Ronald characterized the payments as a property settlement obligation while Darlene filed no claim with that tribunal. Section 17(a)(7) of the Bankruptcy Act of 1898 (11 U.S.C.S. 35(a)(7) (1978)) provides that obligations for alimony, maintenance, or support of a wife or child are not affected by a discharge in bankruptcy. ■■ In *Walters v. Walters* (1950), 341 Ill. App. 561, 94 N.E.2d 725, 729, *aff'd*, 409 Ill. 298, 99 N.E.2d 342, the court delineated the distinguishing characteristics of periodic alimony, now maintenance:

"* * * It is for an indefinite period of time and usually for an indefinite total sum. It is based upon the husband's income and the needs of the wife determined from the standpoint of the manner in which they have been accustomed to live. It is modifiable after decree when the wife's needs increase or decrease, or when the husband's ability to pay increases or decreases. This is so because it takes the form of periodic allowances which do not vest until they become due. It usually terminates upon the death of the husband, although by agreement payments may be made a charge upon the husband's estate after they become due. They are never a charge on a husband's estate in advance of the due date because they are

not, prior to that time, vested. Payments of alimony from husband to wife are not based upon any consideration moving from wife to husband, but are based upon the common law duty of the husband to support his wife. 'Alimony' in this· sense of the word, is modifiable."

The court continued to distinguish alimony in gross:

"On the other hand, the phrase 'alimony in gross' or 'gross alimony' is always for a definite amount of money; the payment is always for a definite length of time; it is always a charge upon the husband's estate and has uniformly been held by our courts to be not modifiable." 341 Ill. App. 567, 568.

■■ Comparing the payments at bar with the above distinction, it can readily be seen that they have the characteristics of alimony in gross, rather than periodic alimony. More difficult is the ultimate determination of whether the payments are alimony in gross or payments incident to a property settlement. In discussing the characteristics of a settlement in lieu of alimony in *Jacobson v. Jacobson* (1964), 50 Ill. App. 2d 244, 200 N.E.2d 379, 381, the court stated:

"* * * The problem is a factual one—whether the payments stem from the natural and legal duty of a husband to support his wife or from the legal and equitable interests the wife may have in property accumulated by the parties during their marriage * * *." 50 Ill. App. 2d 244, 248.

In the case at bar, the trial court held that the parties treated the payments as both alimony and settlement and the juxtaposing of these elements is frequently encountered in agreements of this nature. (See, e.g., *Olson v. Olson* (1978), 58 Ill. App. 3d 276, 374 N.E.2d 247, 248; *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288, 1290; *White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255, 1257; *Koivun v. Koivun* (1977), 45 Ill. App. 3d 39, 359 N.E.2d 215, 216; *Richheimer v. Richheimer* (1972), 9 Ill. App. 3d 376, 292 N.E.2d 190, 192; *Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 286 N.E.2d 113, 114;·*Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372, 374-75; *In re Estate of Schwarz* (1966), 76 Ill. App. 2d 114, 220 N.E.2d 889, 891; *Jacobson v. Jacobson* (1964), 50 Ill. App. 2d 244, 200 N.E.2d 379, 379-80; *Kohler v. Kohler* (1961), 31 Ill. App. 2d 151, 175 N.E.2d 603, 604-05; *Whitney v. Whitney* (1957), 15 Ill. App. 2d 425, 146 N.E.2d 800, 802; *Maybaum v. Maybaum* (1952), 349 Ill. App. 80, 110 N.E.2d 78, 80; *Walters v. Walters* (1950), 341 Ill. App. 561, 94 N.E.2d 726, 727.) Alimony in gross has been characterized as "part of the lump sum property settlement" and "closely connected" with the distribution of real and personal property (*Koivun v. Koivun*), and is often indistinguishable in character from a settlement of property between spouses.

■■ It is this problem of definition, usually encountered in differentiating between periodic and gross alimony, that led to the unchallenged hearing on the issue of intent in the case at bar. As the court stated in *Olson v. Olson* (1978), 58 Ill. App. 3d 276, 374 N.E.2d 247, 249:

> "* * * The purpose of a settlement agreement is not to provide a means for first determining whether alimony is in gross or periodic in form and then to proclaim that due to the in gross or periodic character of the alimony, certain rights and consequences exist. Rather, the purpose of a settlement agreement is to establish the rights and duties of the parties to the agreement in the first instance. It is those vested rights, freely given by each party, which must control. Only if the agreement, when taken as a whole, fails to sufficiently define those rights and duties is it necessary or indeed justifiable to determine the form of alimony involved and the corresponding rights and duties which the law prescribes for that form."

■■ In the case at bar, the trial court first determined that the marital settlement agreement was ambiguous, that the payments were treated as both alimony and settlement of property, and that the parties would have made the payments nondischargeable if they had formulated an intention in this regard. The court then determined that, as alimony in gross, the payments could not be modified. We cannot separate or segregate any part or provision of the payments exclusively for the alimony nor would we have any authority to do so (see *Walters v. Walters* (1951), 409 Ill. 298, 99 N.E.2d 342, 345), nor do we find a different result mandated by any provision of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) or the prior Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.*) and decisions thereunder. We therefore need not decide whether the Divorce Act is here applicable. See *Lamp v. Lamp* (1979), 73 Ill. App. 3d 713, 392 N.E.2d 349, 352.

■■ We are mindful of Ronald's contention that the orders of the trial court are in conflict, thereby denying him relief from his present financial difficulties. We note the words of the court in *Koivun v. Koivun* (1977), 45 Ill. App. 3d 39, 359 N.E.2d 215, 217:

> "* * * In modern society divorce has become a luxury but the bargained for purchase price must nevertheless be paid when it is sanctioned by court approval and entered of record in the divorce decree. Here defendant agreed to forego receiving periodic alimony for any indefinite period of time and agreed to a certain lump sum settlement paid in installments. It is the policy of the courts to enforce property settlement agreements between parties to a divorce action. *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372. * * *"

Considering the agreement at bar and the intentions of the parties, we do not find the interpretation and construction of the marital settlement agreement and orders therefrom to be manifestly erroneous.

Accordingly, the orders of the circuit court of Peoria County are affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.