JUDITH S. IHLE, Plaintiff-Appellee, *v.* DONALD M. IHLE, Defendant-Appellant.

Third District    No. 80-348

Opinion filed January 26, 1981.

Harry C. McSteen, of McSteen, Phelan & Egan, P. C., of Joliet, for appellant.

Roy A. Sabuco, of Rudman & Sabuco, of Joliet, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The case at bar arises from a post-decree petition involving the nature of certain monthly payments from the defendant, Donald M. Ihle (hereinafter Donald), to his wife, Judith S. Ihle (hereinafter Judith). The monthly payments in question are found in paragraph D of the parties' marital settlement agreement that was incorporated into their divorce decree entered January 5, 1976. That paragraph provides as follows:

> "that the Defendant shall pay the Plaintiff, through the Clerk of this Court, as and for alimony in gross the sum of $525.00 on 1/5/76 and a like sum on the 5th day of each month thereafter until fully paid; provided however that said payment shall terminate instanter upon Plaintiff's remarriage or her death."

In late 1978, Donald ceased making the monthly payments as provided, and so Judith filed a petition for rule to show cause why Donald should not be found in contempt of court for failing to maintain the scheduled payments. Donald responded by filing a petition to terminate alimony. He alleged that Judith was then living with a man on a continuing, conjugal basis; thus, pursuant to section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510(b)) (hereinafter the new marriage act), his obligation to pay future installments terminated as a matter of law. The trial court, without an evidentiary hearing, characterized the monthly payments as nonterminable alimony in gross and granted Judith's motion to strike Donald's petition.

He appeals from that order, contending that (1) section 510(b) terminates his obligation to pay the sum of $44,100 in monthly $525 installments; and (2) he was improperly denied an evidentiary hearing on his petition to terminate alimony.

■■ Even though the parties' divorce decree was entered prior to the effective date of the new marriage act, the act applies to this post-decree proceeding. (Ill. Rev. Stat. 1979, ch. 40, par. 801(c); *Lamp v. Lamp* (1980), 81 Ill. 2d 364, 410 N.E.2d 31.) Naturally, however, the decretal provision in issue was drafted using the terminology of the prior statute, namely, alimony in gross. (Ill. Rev. Stat. 1975, ch. 40, par. 19.) Thus, our purpose is to ascertain the character of the parties' intentions under the prior law and then to superimpose the new act on those intentions.

Under the prior marriage act, there existed three distinct sets of decretal rights and duties. The first was periodic alimony, which was defined as an allowance in a decree carved out of one spouse's estate for the support of the other. (*Adler v. Adler* (1940), 373 Ill. 361, 26 N.E.2d 504.) The payments extended for an indefinite period of time and usually for an indefinite amount. (*Walters v. Walters* (1950), 341 Ill. App. 561, 94 N.E.2d 726, *aff'd* (1951), 409 Ill. 298, 99 N.E.2d 342.) Because periodic alimony was based on the spouse's common law duty to support the other, the payments were modifiable after the decree to reflect the changes in the recipient's needs, or the obligor's ability to pay. Hence, the obligation usually terminated upon the death of the obligor or the recipient, and future installments were never a charge on the obligor's estate.

The second decretal relationship under the prior marriage act was called alimony in gross, which was defined in *Walters v. Walters* (1950), 341 Ill. App. 561, 567, 94 N.E.2d 726, 729, *aff'd* (1951), 409 Ill. 298, 99 N.E.2d 342, as a sum certain of money, payable in installments for a fixed period of time. Alimony in gross was not modifiable and, pursuant to section 18 of the prior marriage act (Ill. Rev. Stat. 1975, ch. 40, par. 19), the recipient was entitled to receive future unpaid installments regardless of the death of either party or remarriage by the recipient. Alimony in gross became nonmodifiable or vested on the date of settlement or entry of the decree.

The third decretal relationship was the property settlement in lieu of alimony. It consisted of a lump sum, often payable in installments, passing between the parties as consideration for their release of their marital rights, including court-ordered periodic alimony. (*Jacobson v. Jacobson* (1964), 50 Ill. App. 2d 244, 200 N.E.2d 378.) As with alimony in gross, a property settlement in lieu of alimony was nonmodifiable or vested on the date of settlement or entry of the decree.

The source of the obligation distinguished alimony in gross from a property settlement. The former stemmed from the legal duty of the spouse to support the other, while the latter was based on the legal and equitable interests each spouse has in marital property accumulated during coverture. (*Jacobson v. Jacobson*.) The distinction between ali-

mony in gross and a property settlement became muddled by parties frequently juxtaposing elements of both into a single agreement. This court recently commented that:

> "Alimony in gross has been characterized as 'part of the lump sum property settlement' and 'closely connected' with the distribution of real and personal property (*Koivun v. Koivun*), and is often undistinguishable in character from a settlement of property between spouses." (*Pacione v. Pacione* (1980), 81 Ill. App. 3d 600, 605, 402 N.E.2d 316, 320.)

Consequently, neither the labels attached nor the method of payment prescribed by the parties conclusively determined the nature of the decretal provision. *Jacobson v. Jacobson* (1964), 50 Ill. App. 2d 244, 200 N.E.2d 379; *Walters v. Walters* (1950), 341 Ill. App. 3d 561, 94 N.E.2d 726, *aff'd* (1951), 409 Ill. 298, 99 N.E.2d 342.

In the case at bar, we find that the parties intended paragraph D to constitute alimony in gross in the nature of a property settlement. (*Pacione v. Pacione*.) The decretal section ordered Donald to pay a specific amount ($44,100) in monthly installments. The payments would have expired in a definite period of time. The fact that the agreement provided for the sum payable in installments does not negate a property settlement. Further, the provision terminating the installments upon the death or remarriage of Judith does not change the settlement agreement to periodic alimony, now maintenance. (See, *e.g.*, *Olson v. Olson* (1978), 58 Ill. App. 3d 276, 374 N.E.2d 247; *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372.) Decretal paragraph P supports the trial court's conclusion that the parties intended the obligation to serve as a settlement of their marital property rights:

> "P. That each of the parties is hereby forever barred and foreclosed from permanent alimony * * *."

Therefore, according to the marriage act then in effect at the time the parties' decree was entered, the $525 monthly installments were part and parcel of a nonmodifiable property settlement.

Section 510 of the new marriage act generally carries forward the same structure regulating divorce that was found in section 18 of the prior statute which was in effect at the time the decree in the case at bar was entered. (*Lamp v. Lamp* (1980), 81 Ill. 2d 364, 369, 410 N.E.2d 31, 33.) The nomenclature of the new marriage act does not use the term alimony. Instead, the act refers to maintenance (Ill. Rev. Stat. 1979, ch. 40, par. 504), a term equivalent to periodic alimony. (*Pacione v. Pacione* (1980), 81 Ill. App. 3d 600, 604, 402 N.E.2d 316, 318.) Maintenance may be modified by post-decree proceeding. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) The new act, however, does not contain an equivalent to section 18 of the prior act that entitled the recipient to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed

in the decree regardless of the death of either party or remarriage of the recipient. The absence of such a provision effectively eliminates alimony in gross. Lastly, property settlements remain nonmodifiable according to section 510(a).

In the case at bar, Donald has invoked section 510(b) as authorizing the termination of his obligation to pay the remaining monthly installments. (Ill. Rev. Stat. 1979, ch. 40, par. 510(b).) That section provides for the termination of future maintenance upon the death of either party, the remarriage of the recipient, or the cohabitation by the recipient with another person on a resident, conjugal basis. The last terminating event, upon which Donald has based his petition to terminate, was not found in the prior marriage act. Its inclusion in the new act is intended to reverse prior Illinois law which permitted maintenance payments to continue where the recipient entered into a continuing, conjugal relationship, thus deriving support from two sources. (See, *e.g.*, *Hall v. Hall* (1975), 25 Ill. App. 3d 524, 323 N.E.2d 541.) That provision also reiterates Illinois public policy against condoning nonmarital relationships. See, *e.g.*, *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421; *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 394 N.E.2d 1204.

■■ We have found in the instant case that, according to the law existing at the time the decree was entered, the $44,100 obligation represented part of the settlement of the parties' property rights accumulated during coverture and not the common law duty of Donald to support Judith. We further hold that, since the decisions of the former act generally remain applicable to the new marriage act (*Lamp v. Lamp* (1980), 81 Ill. 2d 364, 369-70, 410 N.E.2d 31, 33), paragraph D should be given the same effect here. Therefore, Donald's $44,100 obligation, as part and parcel of the parties' marital property settlement, cannot be revoked by a court according to section 510(a) absent a finding of extrinsic fraud or want of jurisdiction. *Overton v. Overton* (1972), 6 Ill. App. 3d 1086, 287 N.E.2d 47; *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372.

As this court recently declared, a property settlement is generally inviolable:

> "In modern society divorce has become a luxury but the bargained for purchase price must nevertheless be paid when it is sanctioned by court approval and entered of record in the divorce decree. Here defendant agreed to forego receiving periodic alimony for an indefinite period of time and agreed to a certain lump sum settlement paid in installments. It is the policy of the courts to enforce property settlement agreements between parties to a divorce action." *Koivun v. Koivun* (1977), 45 Ill. App. 3d 39, 42, 359 N.E.2d 215, 217.

Donald advances three recent cases to support his contention that

section 510(b) terminates his obligation (*In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 404 N.E.2d 469; *Schoenhard v. Schoenhard* (1979), 74 Ill. App. 3d 296, 392 N.E.2d 764; *In re Support of Halford* (1979), 70 Ill. App. 3d 609, 388 N.E.2d 1131). His reliance is misplaced. In each of those cases, the obligation sought to be terminated by section 510(b) were maintenance payments of an indefinite duration based on the needs of the dependent spouse and not a lump sum in the nature of a property settlement.

Donald places principal reliance upon *Bramson*. There the parties fixed the terms for maintenance in a settlement agreement. The husband was obligated to pay $11,000 per year to his former wife. The parties set no termination date, so the obligation could have extended for an indefinite period of time. The agreement did state that the maintenance terminated if either the wife died or remarried or if the husband died and the wife received payment from his insurance trust. The agreement further provided that the parties waived all other property rights and claims arising from their coverture. The parties were divorced and the settlement agreement was incorporated into the decree.

The husband then stopped the payments, alleging that his former wife was living with a man on a conjugal basis. She contended that the settlement agreement solely governed termination of maintenance, hence, the parties waived the application of section 510(b). The court rejected her argument and declared that the terminating events were mandatory. Therefore, the section applied regardless of the settlement agreement.

We agree with the court in *Bramson* that the mandate of section 510(b), as it applies to future maintenance, cannot be avoided by agreement between the parties:

> "The decisions of this court have established that the statutory power of a court to reduce the amount of periodic payments, whether by way of alimony or child support, is not defeated by the fixing of the amount of the payments in a settlement agreement which was incorporated in the decree." (*Lamp v. Lamp* (1980), 81 Ill. 2d 364, 370, 410 N.E.2d 31, 33.)

In the instant case, we have found that the $44,100 obligation was not future maintenance, but a property settlement, which, notwithstanding section 510(b), is irrevocable according to section 510(a). Accordingly, we hold that section 510(b) does not terminate an obligation in the nature of a property settlement.

■■ We also find that the trial court was not manifestly erroneous in denying Donald an evidentiary hearing on his petition to terminate alimony. The intention of the parties is the principal element in interpreting a decretal provision. When that intent can be derived from the plain and unambiguous text, extrinsic evidence is unnecessary. (*Maloney*

*v. Maloney* (1980), 88 Ill. App. 3d 146, 410 N.E.2d 416.) When reading paragraph D with paragraph P, we find that the parties clearly intended that the $44,100 obligation, payable in installments, be part and parcel of their marital property disposition. The trial court then properly refused to apply section 510(b). The cause need not be remanded for an evidentiary hearing.

For the foregoing reasons, the order of the circuit court of Will County striking Donald's petition to terminate alimony is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.