In re SUPPORT OF MARY PAXTON BURKS *et al.*—(JAMES BURKS, Petitioner-Appellant, *v.* MARY PAXTON BURKS, Respondent-Appellee.)

First District (3rd Division)    Nos. 80-414, 80-1023 cons.

Opinion filed September 30, 1981.

Howard LeVine and Ross B. Shugan, both of LeVine, Wittenberg, Eisner, Newman & Silverman, of Chicago, for appellant.

Frank T. Steponate and Thomas G. Merkel, both of Friend, Steponate & Slkutsky, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Petitioner, James Burks, filed a petition to modify his support obligation to respondent, Mary Paxton Burks, and their children. This obligation arose from a settlement agreement between respondent and petitioner which was incorporated in a divorce judgment. The trial court refused to grant the relief sought in the petition. Petitioner appeals, contending that the trial court's ruling was erroneous and that the trial court erred in awarding attorney's fees to respondent's attorney. We affirm in part, reverse in part and remand.

A judgment for divorce was entered on September 2, 1976. The judgment incorporated a settlement agreement entered into between the parties. The agreement provided that petitioner was to pay respondent

$272,250 in equal monthly installments of $2,250 each. The payment of this sum was to be in "full and final settlement of all of [petitioner's] obligations to support and maintain [respondent] as a 'lump sum property settlement in installments' in lieu of alimony and also as and for the support of the minor children of the parties." In the event of the death of respondent or petitioner, any installments thereafter due would abate, and respondent and her heirs would have no further claim against petitioner or his heirs. If petitioner became ill or disabled and therefore unable to work and make the payments, the payments due during that period would be delayed until petitioner's recovery. Upon petitioner's recovery and return to work, he would pay respondent with each current payment an additional amount equal to 5% of the current payment until all delayed payments were made. The agreement further provided:

> "Wife releases and discharges Husband absolutely and forever for the rest of her life from all claims, demands, past, present or future, for alimony or for any other provisions for maintenance and support except as contained in this Agreement. Wife agrees that she will not seek increased or additional amounts for the support, maintenance or pre-college education of the children. If, at any time hereafter, any court of competent jurisdiction orders Husband to pay any additional sum as and for the support, maintenance, and pre-college education of the minor children, Wife agrees to indemnify Husband in the amount of the increase of the additional sum."

The parties also agreed that the payment of college expenses of the minor children would be determined at the time the children were ready to attend college.

On July 17, 1979, petitioner filed a petition alleging a material change in circumstances which necessitated a reduction in child support and maintenance. At the time of the divorce judgment in 1976, petitioner was employed by Presbyterian St. Lukes Hospital as an obstetrician and gynecologist. He was earning approximately $53,000 per year. On June 30, 1977, petitioner left Presbyterian St. Lukes Hospital and joined Health Specialists, Inc. In his first and second years of employment with Health Specialists, petitioner earned $70,000 and $76,500 respectively.

On June 30, 1979, petitioner left Health Specialists to open a private practice. According to petitioner, he left Health Specialists because he was having problems getting along with his fellow workers and because he was not earning enough money to cover his expenses. Petitioner formed a medical corporation and was drawing a monthly gross salary of $2,083.33 at the time of the hearing on the petition. Petitioner's new wife, Marilyn Moore, was also working for the corporation, earning $15,000 per year. At the time of the hearing, the corporation had no retained earnings.

From the time petitioner opened his private practice in July of 1979 until September of 1979, petitioner paid respondent only one-half of the monthly amount required by the settlement agreement. His monthly expenses for October 1979 were $5,302.45, which included a full payment of $2,250 to respondent. That amount also included a $750 monthly payment to Moore's mother for the purpose of property in Michigan.

At the time of the divorce judgment, the parties' three children were living with respondent. Shortly thereafter, the oldest child left to attend college. The parties' middle child enrolled in college in September of 1979. At the time of the hearing, petitioner had paid for the college education of both children. The youngest child attended the University of Chicago Lab School, and respondent paid her tuition.

At the time of the divorce judgment, respondent was working 15 to 20 hours per week and earning $5 per hour. At the time of the hearing on the petition, she was earning approximately $6500 per year.

The trial court refused to grant the relief requested in the petition, ruling that the agreement between the parties is not modifiable. The trial court specifically stated that it did not have the power to modify the terms of the payments. Petitioner contends that the ruling of the trial court was erroneous because his support obligation is modifiable under section 502(f) of the Illinois Marriage and Dissolution of Marriage Act. Section 502(f) provides:

"Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the separation agreement so provides. Otherwise, terms of a separation agreement set forth in the judgment are automatically modified by modification of the judgment." (Ill. Rev. Stat. 1979, ch. 40, par. 502(f).)

If the terms are modifiable, they may be modified only upon a showing of a substantial change in circumstances. Ill. Rev. Stat. 1979, ch. 40, par. 510(a); *Miller v. Miller* (1978), 65 Ill. App. 3d 844, 846, 382 N.E.2d 823, 826.

In the present case, the agreement, which was executed prior to the new act, does not expressly preclude or limit modification of its terms. However, regardless of the presence or absence of any such language, provisions relating to the support of minor children are always modifiable. (*In re Support of Bayuk* (1979), 79 Ill. App. 3d 877, 880, 398 N.E.2d 1109, 1112; *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 386, 396 N.E.2d 43, 46; *Dull v. Dull* (1979), 73 Ill. App. 3d 1015, 1017, 392 N.E.2d 421, 423; *In re Marriage of Gentile* (1979), 69 Ill. App. 3d 297, 301, 387 N.E.2d 979, 983.) The parties cannot agree to make child support nonmodifiable. (Ill. Ann. Stat., ch. 40, pars. 502, 510, Historical and Practice Notes, at 403, 700 (Smith-Hurd 1980).) Therefore, child support is modifiable even when

combined with nonmodifiable alimony or maintenance. (See *Powers v. Powers* (1979), 69 Ill. App. 3d 485, 388 N.E.2d 76; Ill. Ann. Stat., ch. 40, par. 510, Historical and Practice Notes, at 700 (Smith-Hurd 1980).) It follows that to the extent the payments in this case comprise child support, they are modifiable.

A question remains as to the modifiability of the balance of the unallocated payment which the parties labeled "a lump sum property settlement in lieu of alimony." If a judgment dividing property or awarding lump sum alimony is rendered prior to the effective date of the new act, such judgment cannot be modified after the effective date of the act if the judgment would not have been modifiable under prior law. (Ill. Ann. Stat., ch. 40, par. 510, Historical and Practice Notes, at 700 (Smith-Hurd 1980).) Under prior law, provisions in a divorce judgment relating to the disposition of the parties' property are not modifiable, whether labeled a property settlement or an award of alimony in gross payable in installments.[1] (*Lamp v. Lamp* (1979), 73 Ill. App. 3d 713, 716, 392 N.E.2d 349, 352, *aff'd* (1980), 81 Ill. 2d 364, 410 N.E.2d 31.) This principle remains unchanged pursuant to section 510(a) of the new act. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a); *Lamp*, 73 Ill. App. 3d 713, 716, 392 N.E.2d at 352; see *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 897, 416 N.E.2d 366, 369.) In contrast, under prior law, periodic alimony (now called maintenance) is modifiable. (*Ihle*, 92 Ill. App. 3d 893, 895, 416 N.E.2d 366, 368; *In re Marriage of Workman* (1980), 89 Ill. App. 3d 886, 888, 412 N.E.2d 614, 616.) Under the new act, the parties may expressly preclude or limit modification of the terms of maintenance if the separation agreement so provides. Otherwise, the terms of a separation agreement are automatically modified by modification of the judgment. Ill. Rev. Stat. 1979, ch. 40, par. 502(f).

■■ In the present case, after looking at the agreement as a whole, we conclude that the parties intended the balance of the payment to relate to the disposition of their property. Although the label used is not determinative, the parties stated that the payments represented a lump sum property settlement in lieu of alimony. Also, the agreement provides for a sum certain payable in installments for a fixed period of time; respondent is to receive 121 equal installments of $2,500 each. These provisions are consistent with the characteristics of a property settlement in lieu of alimony or alimony in gross (see *Ihle*, 92 Ill. App. 3d 893, 895, 416 N.E.2d 366, 368; *Workman*, 89 Ill. App. 3d 886, 888, 412 N.E.2d 614, 616; *Pacione*

---

[1] Courts have noted that the distinction between alimony in gross and a property settlement became muddled by parties frequently juxtaposing elements of both into a single agreement. (*Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 895-96, 416 N.E.2d 366, 368; *Pacione v. Pacione* (1980), 81 Ill. App. 3d 600, 605, 402 N.E.2d 316, 319.) Thus, alimony in gross is often indistinguishable from a settlement of property between spouses. *Pacione*, 81 Ill. App. 3d 600, 605, 402 N.E.2d 316, 320.

*v. Pacione* (1980), 81 Ill. App. 3d 600, 605, 402 N.E.2d 316, 319) rather than periodic alimony which is for an indefinite period of time and usually for an indefinite sum of money (*Ihle*, 92 Ill. App. 3d 893, 895, 416 N.E.2d 366, 368; *Workman*, 89 Ill. App. 3d 886, 888, 412 N.E.2d 614, 616). The fact that the payments terminate on the death of respondent does not transform this arrangement into periodic alimony. (See *Ihle*, 92 Ill. App. 3d 893, 896, 416 N.E.2d 366, 369; *Workman*, 89 Ill. App. 3d 886, 888, 412 N.E.2d 614, 616.) Furthermore, the agreement provides that the respondent releases and discharges petitioner "absolutely and forever for the rest of her life from all claims, demands, past, present and future, for alimony or for any other provisions for maintenance and support except as contained in this agreement."

■■ Accordingly, since we conclude that the balance of the payment represents a disposition of property between the parties, that portion of the payment is not modifiable under either the prior law or the new act. However, as discussed above, the portion of the payment attributable to child support is modifiable. Since the trial court concluded that it did not have the power to modify the payments, it could not have properly exercised its discretion in determining whether there was a substantial change in circumstances to warrant modification.[2] Consequently, we remand the case to the trial court for a determination as to whether the judgment should be modified insofar as it relates to child support and, if so, to what extent it should be modified. See *Powers v. Powers* (1979), 69 Ill. App. 3d 485, 490, 388 N.E.2d 76, 79-80.

Petitioner also contends that the trial court erred when it ordered him to pay a portion of the fee requested by respondent's attorney for defense of the petition for modification of the judgment. Petitioner does not contest the time spent, the hourly billing charge or the expertise of respondent's counsel. Rather, petitioner argues that the trial court did not properly consider the financial resources of the parties in making its determination because, according to petitioner, respondent has the ability to pay her own attorney's fees. See Ill. Rev. Stat. 1979, ch. 40, par. 508.

■■ Under section 508 of the act, the court may order either spouse to pay a reasonable amount for the costs and attorney's fees necessarily incurred by the other spouse. (Ill. Rev. Stat. 1979, ch. 40, par. 508.) Such an order is justified when the spouse seeking relief demonstrates financial inability to pay coupled with the ability of the other spouse to do so. (*In re*

---

[2] In its ruling, the trial court also stated that modification was precluded because "this was a voluntary shift on the part of Doctor Burks." However, if good faith is shown, a voluntary change in employment may be considered as a factor in determining whether there is a substantial change in circumstances to warrant abatement or modification of child support payments. See *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 46-47, 400 N.E.2d 995, 997; *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 147, 398 N.E.2d 1243, 1245; *Glass v. Peitchel* (1976), 42 Ill. App. 3d 240, 242, 355 N.E.2d 750, 754.

*Marriage of Breener* (1981), 95 Ill. App. 3d 100, 104, 419 N.E.2d 400, 403; *Scott v. Scott* (1979), 72 Ill. App. 3d 117, 126, 389 N.E.2d 1271, 1278.) The allowance of attorney's fees rests in the discretion of the trial court, and we will not disturb the trial court's determination unless there is an abuse of discretion. (*Scott*, 72 Ill. App. 3d 117, 126, 389 N.E.2d 1271, 1278.) Based on the relative circumstances of the parties as revealed by the record, we cannot say that the trial court abused its discretion by requiring petitioner to pay a portion of respondent's attorney's fees. The trial court could have reasonably concluded that petitioner had the ability to pay and respondent did not have the ability to pay that portion of the fees.

Finally, we address petitioner's contention that the trial court improperly ordered him to pay respondent's attorney temporary fees for defense of the appeal from the denial of the petition for modification of the judgment. He argues that the award was improper because the trial court did not hold an evidentiary hearing.[3]

Respondent filed a petition in which she requested temporary attorney's fees for defense of the appeal. Petitioner's attorney stated that he was not ready for a hearing since petitioner was unable to be present because of an emergency. Petitioner's attorney stated that he thought a hearing would be necessary. The trial court did not conduct a hearing, but rather, it summarily awarded temporary attorney's fees. This was error because when there is a request for a hearing on attorney's fees, the court must conduct a hearing on that issue. *People ex rel. Foster v. Louder* (1981), 97 Ill. App. 3d 1104, 1107, 423 N.E.2d 1272, 1275; see *Hogan v. Hogan* (1978), 58 Ill. App. 3d 661, 668, 374 N.E.2d 1040, 1045.

■■ Accordingly, the order of the trial court denying the relief sought in the petition to modify petitioner's support obligation is reversed, and the case is remanded for proceedings consistent with what is stated herein. The order requiring petitioner to pay a portion of respondent's attorney's fees for defense of the petition for modification of the judgment is affirmed. The order requiring petitioner to pay temporary attorney's fees to respondent's attorney for defense of this appeal is reversed, and the case is remanded for a hearing on that issue.

Affirmed in part, reversed in part and remanded.

McGILLICUDDY and WHITE, JJ., concur.

---

[3] The judge who ruled on this petition for attorney's fees was a different judge than the judge who ruled on the other petition for attorney's fees and the petition for modification of the judgment.