*In re* MARRIAGE OF MARY ELLEN LOWE, Petitioner-Appellee, and
ANDREW C. LOWE, Respondent-Appellant.

Second District    No. 81-165

Opinion filed November 3, 1981.

Law Offices of Paul S. Chervin, Ltd., of Waukegan, for appellant.

William G. Rosing and Stephen G. Applehans, both of Rosing, Carlson and Magee, of Waukegan, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This appeal arises from an order of the circuit court of Lake County finding that a marital settlement agreement was not ambiguous and denying a petition seeking a declaration that payment of $17,500 under the terms of the agreement was maintenance. The only issue for our review is whether the settlement agreement was so ambiguous on its face as to require an evidentiary hearing on the issue of whether the $17,500 payment should be considered a property settlement or future maintenance.

The parties to this appeal, Mary Ellen Lowe (Mary Ellen) and Andrew C. Lowe (Andrew), were divorced in 1975. The judgment incorporated a written settlement agreement which provided in pertinent part:

"3. The Plaintiff agrees to Quit-Claim all interest in:

a. Family home in Wildwood, Ill.

b. Vacant lot adjacent to family home in Wildwood, Ill.

c. House at 5629 S. Natoma, Chicago, Ill.

d. Forty acre farm in Franklin Parish, Louisiana

4. For and in consideration of the Quit-Claims in Par. 3 (above) the Defendant agrees to pay to the Plaintiff the following sums:

a. $10,000 as soon after the filing of the Complaint for Divorce as possible. Actually paid July 11, 1975.

b. An additional sum of $10,000 to be paid by 90 days after the signing of the Decree for Divorce.

c. An additional sum of $17,500 to be paid when the youngest boy reaches 18 years of age, except that if the Plaintiff remarries some one other than the Defendant at which time this $17,500 shall be waived."

On July 29, 1980, Andrew Lowe filed a petition in the circuit court of Lake County seeking a judgment finding the unpaid $17,500 to be maintenance and terminating his obligation to pay it. The petition alleged that since 1977, Mary Ellen Lowe had cohabited with another person on a resident, continuing conjugal basis and that section 510(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510(b)) terminates the obligation to pay future maintenance upon the occurrence of such an event. Mary Ellen Lowe filed a response to the petition denying all material allegations and asking that the cause be dismissed.

Subsequently, Andrew Lowe filed a petition praying "for a hearing on the issue of [the settlement agreement's] ambiguity and the allowance of the Petitioner's testimony regarding parol evidence to determine the intention of the parties." This was opposed by a petition of Mary Ellen Lowe which also requested immediate payment of the $17,500.

After hearing an offer of proof by Andrew and argument of the parties on February 4, 1981, the court ruled that the terms of the property agreement were not ambiguous, denied Andrew Lowe's request to consider parol evidence, and denied his petition to consider the $17,500 as future maintenance. The court ordered payment of the $17,500 since the youngest boy had reached the age of 18 and since Mary Ellen Lowe had not remarried.

Andrew Lowe contends that his obligation to pay the $17,500 contained in paragraph 4(c) of the property settlement agreement is terminated by operation of section 510(b) of the Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 510(b).) That section provides:

"The obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." (Ill. Rev. Stat. 1979, ch. 40, par. 510(b).)

Therefore, in order for Andrew Lowe to prevail, we would have to determine that the $17,500 payment is in the nature of future maintenance rather than in the nature of a property settlement. Provisions of what is construed as a property settlement are not modifiable or revocable

"unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." (Ill. Rev. Stat. 1979, ch. 40, par. 510(a); *Lamp v. Lamp* (1980), 81 Ill. 2d 364, 369, 410 N.E.2d 31.) However, payments construed as future maintenance may be modified upon a showing of "a substantial change in conditions." (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) One such change in conditions which justifies the modification of maintenance is "if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." Ill. Rev. Stat. 1979, ch. 40, par. 510(b).

In the present case, the complaint for divorce was filed prior to the enactment of the new Illinois Marriage and Dissolution of Marriage Act. The petition for modification was filed after the new act's effective date. The earlier act contained no such provision for the termination of alimony (maintenance) payments upon a showing of resident, continuing conjugal cohabitation. However, it is clear that the provisions of section 510(b) will still apply to the case at bar. Section 801(c) provides that the Marriage and Dissolution of Marriage Act "applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." (Ill. Rev. Stat. 1979, ch. 40, par. 801(c); see also *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 895, 416 N.E.2d 366, and *In re Support of Halford* (1979), 70 Ill. App. 3d 609, 610, 388 N.E.2d 1131.) The application of section 510(b) is mandatory and may not be avoided either by courts or by parties to the settlement agreement purportedly providing maintenance terminating events to the contrary. (*Warren v. Warren* (1980), 88 Ill. App. 3d 543, 547, 410 N.E.2d 915; *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 661, 404 N.E.2d 469.) As stated by the court in *In re Support of Halford* (1979), 70 Ill. App. 3d 609, 388 N.E.2d 1131, "it was the intention of our legislature to provide for the termination of an ex-spouse's obligation to pay future maintenance whenever the spouse receiving the maintenance has entered into a husband-wife relationship with another, whether this be by legal or other means." 70 Ill. App. 3d 609, 612, 388 N.E.2d 1131.

In order for us to determine whether the $17,500 payment is maintenance or a property settlement, it is necessary to define the characteristics of each.

Periodic alimony (maintenance) has been defined as follows:

"It is for an indefinite period of time and usually for an indefinite total sum. It is based upon the husband's income and the needs of the wife determined from the standpoint of the manner in which they have been accustomed to live. It is modifiable after decree when the wife's needs increase or decrease, or when the husband's ability to pay increases or decreases. This is so because it takes the form of periodic allowances which do not vest until they become

due. It usually terminates upon the death of the husband, although by agreement payments may be made a charge upon the husband's estate after they become due. They are never a charge on a husband's estate in advance of the due date because they are not, prior to that time, vested. Payments of alimony from husband to wife are not based upon any consideration moving from wife to husband, but are based upon the common-law duty of the husband to support his wife. 'Alimony' in this sense of the word, is modifiable." *Walters v. Walters* (1950), 341 Ill. App. 561, 567-68, 94 N.E.2d 726, *affirmed* (1951), 409 Ill. 298, 99 N.E.2d 342. Also quoted in *Pacione v. Pacione* (1980), 81 Ill. App. 3d 600, 604-05, 402 N.E.2d 316, and *Warren v. Warren* (1980), 88 Ill. App. 3d 543, 546, 410 N.E.2d 915.

On the other hand, a property settlement has been defined as a sum certain, often payable in installments, passing between the parties as consideration for their release of their marital rights. *Jacobson v. Jacobson* (1964), 50 Ill. App. 2d 244, 247-48, 200 N.E.2d 379.

In the recent case of *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 416 N.E.2d 366, the court applied the above principles to ascertain the intent of the parties to an agreement which contained language very similar to the settlement agreement in the case at bar. In *Ihle*, the marital settlement agreement provided that the defendant would pay the plaintiff "alimony in gross" in the sum of $44,100 in monthly installments of $525. The payment of these installments was to terminate upon the plaintiff's remarriage or death. The defendant filed a petition to terminate alimony alleging that the plaintiff's continual, conjugal cohabitation terminated his obligation under section 510(b) of the Marriage and Dissolution of Marriage Act. The appellate court determined that the parties intended the payments to constitute alimony in gross in the nature of a property settlement since the agreement ordered defendant to pay a sum certain in monthly installments and the payments would have expired in a definite period of time. The court stated that the provisions terminating the installments upon the death or remarriage of the plaintiff did not change the nature of the payments to periodic alimony. The court further indicated that its conclusion was reinforced by another paragraph in the agreement which provided that both parties would be precluded from ever obtaining permanent alimony. The court concluded that since the payments were intended as a marital property settlement, the obligation to pay them could not be revoked pursuant to section 510(b). Finally, the court held that the trial court had not abused its discretion in failing to hold an evidentiary hearing since the intent of the parties was clear from the plain, unambiguous text of their agreement.

The parallels between the *Ihle* case and present case are obvious. The

intent of the parties that their agreement constitute a property settlement could not be more clear. The agreement plainly provides that the payments from Andrew Lowe to Mary Ellen were "[f]or and in consideration of" the petitioner quit-claiming her interest in various pieces of marital property. Also, in paragraph one of the agreement both parties expressly waived all claims to alimony. However, the clearest indication of the nature of the agreement is the fact that it provides for a definite total sum which was to be paid at the end of a definite period of time rather than on a periodic basis for an indefinite period of time which is characteristic of maintenance. We agree with the *Ihle* court's statement that a provision terminating the obligation to pay an installment upon the remarriage of the recipient does not change the nature of the payment to maintenance.

Andrew's citation of *Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 286 N.E.2d 113, *cert. denied* (1977), 429 U.S. 921, 50 L. Ed. 2d 288, 97 S. Ct. 318, is not persuasive. In *Sudler* this court held that since the settlement agreement contained characteristics of periodic alimony and also language commonly identified with a lump sum agreement, the agreement was ambiguous and extrinsic evidence was necessary to determine the parties' intent. In the present case, the only provision of the agreement that is even arguably suggestive of maintenance is that the $17,500 is waived upon the remarriage of Mary Ellen. As *Ihle* and other cases illustrate, such a provision is not uncommon in a property settlement and does not change the nature of the agreement to periodic maintenance. 92 Ill. App. 3d 893, 896, 416 N.E.2d 366; see also *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 190, 234 N.E.2d 372.

Since we have determined that the agreement constitutes a property settlement, it is not modifiable except under conditions which would justify the reopening of a judgment. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) Also, since the agreement was not ambiguous the trial court did not err in failing to hold an evidentiary hearing. 92 Ill. App. 3d 893, 898-99, 416 N.E.2d 366.

Andrew further contends that the fact he appeared *pro se* at the time the settlement agreement was incorporated into the divorce decree entitles him to an evidentiary hearing. He cites our opinion in *In re Marriage of Beck* (1980), 83 Ill. App. 3d 976, 404 N.E.2d 972, as support for this contention. *Beck* is clearly inapposite to the facts herein as our holding in that case, which reversed the dismissal of a section 72 (Ill. Rev. Stat. 1979, ch. 110, par. 72) petition after a hearing, was based on a fraud committed upon the wife when an attorney, who was selected by the husband's attorney, agreed to an oral settlement without consulting or even meeting the wife. Here there is no allegation of fraud, the unambiguous settlement agreement is signed by Andrew and he was present when the judgment was entered by the court. The mere fact that the

agreement in the present case appears to have been drafted by Mary Ellen's attorney and that Andrew appeared *pro se* when it was incorporated into the divorce decree does not in any way bear on the question of the agreement's ambiguity or lack thereof.

For the above stated reasons the judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.