*In re* MARRIAGE OF ARTHUR CARL BURGSTROM, Petitioner-Appellant, and SHIRLEY ANN BURGSTROM, Respondent-Appellee.

First District (2nd Division)   No. 84—1640

Opinion filed August 6, 1985.

Rothenberg & Levine, of Chicago (Allan G. Levine, of counsel), for appellant.

Bernard Hammer, Ltd., and Edward I. Stein, Ltd., both of Chicago, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Petitioner, Arthur Carl Burgstrom (Arthur), appeals from an order of the circuit court of Cook County denying his cross-petition to modify the terms of an agreed order he had entered into with respondent, Shirley Ann Burgstrom (Shirley), following their divorce. Arthur contends that the court erred in denying his cross-petition.

Arthur and Shirley were divorced on February 10, 1977. The judgment for divorce incorporated a detailed property settlement agreement which the parties executed on February 1, 1977. Paragraph F of the agreement recited:

"[T]he parties are mutually desirous of making a full, complete and final settlement of all of their respective rights in and to all property now owned by them, either of them, or which may hereafter be acquired by either of them, and as a part of said settlement, each of the parties desires to make a full, complete and final settlement of any and all claims, past, present and future, against the other and the property and the estate of other *** including *** settlement of claims for alimony, support or maintenance of either party *** and each and every claim against the other arising from the marriage or otherwise."

Article IV, paragraph 1, of the settlement agreement required Arthur to pay to Shirley "as alimony and also for the support and maintenance of [their] children,"[1] the total sum of $507,180, which was to be paid over a period of over 40 years in installments of $3,541 for each of the first three months, and $1,041 for each of the remaining 477 months. Article IV, subparagraph 1(a), provided for cost-of-living adjustments which were tied to fluctuations in the consumer price index. Under article V, paragraph 1, the parties agreed that the payments made under article IV would be deductible by Arthur and taxable to Shirley for Federal income tax purposes. Article IV, subparagraph 2(d), obligated Arthur to pay to Shirley the net increase in Federal and State income taxes attributable to the inclusion in her income of amounts paid to her under the settlement agree-

---

[1]At the time of their divorce, Arthur and Shirley had two children, Cynthia Ann and Robert Wesley. Cynthia reached her majority in 1976; Robert reached his majority in 1978.

ment. Under article V, paragraph 5, Arthur also was required to prepare Shirley's Federal and State income taxes at his expense and to sign the returns as a preparer. Article IV, subparagraph 1(j), allowed Arthur to petition an appropriate court for a reduction in the payments due under the agreement for any year in which his adjusted gross income was less than $63,450. Under article IV, subparagraph 2(e), all payments made pursuant to article IV would terminate on the remarriage of Shirley or on the death of the first to die. Article VI of the settlement agreement disposed of the parties' marital property including their residence in Des Plaines, Illinois, and their property in Fontana, Wisconsin. Under article XIV, the parties' agreement would not be merged into the judgment for divorce but would continue to have independent legal significance "without the ambit of such judgment and [would] be subject to enforcement by either party [as] *** any other contract or agreement."

On the date when the judgment for divorce was granted, Arthur's counsel represented to the court that the $507,180 due to Shirley under the settlement agreement was a "lump sum" to be paid "as alimony and also for the support of the children." Paragraph 5 of the written judgment found that Arthur and Shirley had "entered into a written agreement dated February 1, 1977, making provision for the settlement of all property rights of the parties in lieu of alimony, and the custody and education of the children, and settling and determining the property rights of the parties." Both parties agreed with this finding.

On November 14, 1979, Shirley petitioned the court for an order requiring Arthur to show cause why he should not be held in contempt for failing to comply with various terms of the judgment which had incorporated the parties' written settlement agreement. She also petitioned the court for "an increase in maintenance, or in the alternative, for a finding of maintenance, based upon the interpretation given by this court to the maintenance provision provided therein ***."

Arthur filed a reply to Shirley's petition in which he denied that he had failed to comply with the settlement agreement. He also filed a cross-petition seeking a reduction in his monthly payments pursuant to article IV, subparagraph 1(j), of the agreement.

On August 22, 1980, the parties entered into an agreed order which specifically deleted "and held for naught" the first three paragraphs of article IV of the settlement agreement and each subparagraph thereof, including subparagraph 1(a), which provided for cost-of-living adjustments; subparagraph 1(j), which allowed Arthur to

petition the court for a reduction in payments under certain conditions; and subparagraph 2(d), which required Arthur to pay to Shirley the net increase in Federal and State income taxes attributable to the inclusion in her income of amounts paid to her under the settlement agreement. In their place, the parties substituted seven new paragraphs, none of which dealt with Arthur's right to petition for a reduction in payments. Subparagraph 2(A) substituted a balance due of $495,360, which was to be paid over a period of 24 years in monthly installments of $1,587.70, with an extra payment of $1,587.70 on April 15 of each year during the term of the payments. Subparagraph 2(B) stated that these payments "shall be in lieu of any and all rights to maintenance, formerly known as alimony, and [that] *** Shirley *** therefore waives any and all rights to future maintenance." Subparagraph 2(D) provided that the payments due under the agreed order would terminate on Shirley's remarriage or death and that all payments due subsequent to either event would be forgiven. Paragraph 7 of the agreed order relieved Arthur of his obligation to pay any part of Shirley's income taxes and of his responsibility to prepare her tax return.

On August 30, 1982, Shirley filed a petition to enforce the agreed order entered on August 22, 1980; on September 9, 1982, Arthur filed an answer and a cross-petition for modification of the order. Both parties submitted memoranda. In an order entered on June 5, 1984, the circuit court denied Arthur's cross-petition to modify, finding that the agreed order of August 22, 1980, was nonmodifiable. The court also entered judgment in favor of Shirley and against Arthur in the amount of $36,503.43. This appeal follows.

Arthur, as we have noted, contends the trial court erred in finding that the agreed order of August 22, 1980, was not modifiable. We disagree. While the parties dispute whether the agreement they executed on February 1, 1977, should be characterized as a property settlement in lieu of alimony, alimony in gross or periodic alimony, for the reasons hereinafter set forth, we do not believe that the resolution of this issue is necessary to the disposition of the appeal. Under the agreed order entered on August 22, 1980, Shirley was to receive from Arthur a total of $495,360, payable in monthly installments over a period of 24 years. The order contained no provision for increasing or decreasing the payments.

In our judgment, the payments required to be made under the order of August 22, 1980, should be considered as "maintenance in gross," *i.e.*, "a nonmodifiable sum certain to be received by the former spouse regardless of changes in circumstances." (*In re Mar-*

*riage of Freeman* (1985), 106 Ill. 2d 290, 298, 478 N.E.2d 326.)[2] Although the payments would cease on Shirley's remarriage or death, maintenance in gross may be combined with conditions that might terminate it. (106 Ill. 2d 290, 297, 299-300.) Since the agreed order provided for maintenance in gross which, by definition, is nonmodifiable, it was not necessary to insert additional language into the order that would have expressly precluded or limited modification of the terms set forth therein. (Ill. Rev. Stat. 1983, ch. 40, par. 502(f).) Such language would have been mere surplusage. (*Olson v. Olson* (1983), 114 Ill. App. 3d 28, 32, 448 N.E.2d 229. Accord, *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 994-95, 1000, 431 N.E.2d 1; *In re Support of Burks* (1981), 100 Ill. App. 3d 700, 704, 427 N.E.2d 353; *Ihle v. Ihle* (1981), 92 Ill. App. 3d 893, 895, 416 N.E.2d 366.) Accordingly, we find no error in the trial court's order denying Arthur's cross-petition to modify the agreed order entered on August 22, 1980.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

PERLIN and BILANDIC, JJ., concur.

---

[2]In light of the parties' agreement that the payments would be deductible by Arthur and taxable to Shirley for Federal income tax purposes, we do not believe that the payments should be treated as a property settlement in lieu of maintenance. See generally *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 431 N.E.2d 1.