*In re* MARRIAGE OF KAREN MARTINO, Petitioner-Appellant, and JOHN DREW MARTINO, Respondent-Appellee.

Second District   No. 2—87—0435

Opinion filed March 3, 1988.

Mirabella & Kincaid, of Wheaton (William J. Scott, Jr., of counsel), for appellant.

David S. Cochran, of Downers Grove, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This is an appeal arising from a petition to reduce or abate maintenance. We affirm.

John Martino and Karen Martino were divorced on May 6, 1977, at which time they had one daughter, Ashley. The judgment for divorce provided in pertinent part that John was to provide unallocated maintenance and child support in the amount of $1,500 per month until Ashley reached her 19th birthday or until several other events occurred. The agreement further provided that John would provide housing for both Karen and Ashley. The agreement also stated:

> "KAREN will be responsible, solely, for her utilities, telephone bills, scavenger bills, water bills, maintenance and operation bills, and any and all other costs, of any kind whatsoever, of the maintenance and operation of the premises in which KAREN and ASHLEY reside, or in which KAREN resides without ASHLEY in the future."

In the preceding paragraph both utilities and water bills had been crossed out and appropriately initialed by both K.M. and J.M.

Ashley reached the age of 19 on September 30, 1984. On September 3, 1986, John filed a petition seeking to reduce or abate maintenance. On November 18, 1986, Karen filed a petition seeking a rule to show cause as to why John violated the judgment for divorce.

At a hearing on the two petitions, John testified his income in 1977 was $144,454 and that his income in 1986 was approximately $74,000. He also testified that he initially paid Karen $1,500 plus expenses, miscellaneous expenses for his daughter and whatever else they needed to get along for some period of time. Karen would call him monthly and tell him what the additional expenses were for "Ashley's school or whatever." He would then send her $1,500 plus the additional expenses. John stated that the figures would come out to "$1,700, $1,800, $2,100, $1,900, they would bounce around the $2,000 figure with expenses." After a while he rounded it off and began sending Karen $2,000 per month. John further stated that in 1984 and 1983 he paid Karen $19,330 per year (an average of $1,610.83 per month).

Karen testified that her annual income at the time of the hearing was $18,500 and that at the time of the divorce she was unemployed. She further testified that in the beginning John would pay the utilities in addition to the $1,500 per month and that he ended up just rounding it off eventually to $2,000 per month. She also testified that both her electric and her gas bills averaged between $100 and $150 per month and that she paid $40 per month for water bills.

The trial court entered an order with findings that the income of John had substantially decreased from $144,000 per year in 1977 to $74,000 per year at the time of the hearing, and the income of Karen had increased to $19,000 per year at the time of the hearing from no income in 1977. The trial court further stated that there was no clear and convincing evidence that the amount to be paid to Karen pursuant to the original decree had been amended by oral agreement between John and Karen. The court also found that since January 1, 1986, John had paid to Karen the sum of $11,000. The court ruled that John's petition for reduction of alimony was granted and that John should pay Karen maintenance in the amount of $520 per month effective October 1, 1986, and continuing thereafter for a period of 36 months. The court further ruled that John should continue to furnish Karen housing as described in the original decree until the 30th day of September 1989 and not thereafter. Finally, the trial court ordered that all other payments and reimbursements set forth in the original decree for a tax reimbursement, or the utility cost reimbursement or for any purpose whatsoever, be terminated as of September 23, 1986.

I

Karen first contends that an arrearage existed at the time of the hearing and that the trial court therefore erred in denying her petition for a rule to show cause. In making her argument, Karen concedes that at the time of Ashley's 19th birthday, maintenance was to be automatically reduced to $1,000. However, Karen claims that any amount which John paid in excess of what he owed in any given month should not be credited to subsequent months. Thus, according to Karen, John is in arrears for nine months in which he paid nothing and thus the trial court's finding was against the manifest weight of the evidence.

■■ ■ Karen has not cited any authority for the proposition that credit should not be given for overpayments. We therefore consider this argument waived pursuant to Supreme Court Rule 341(e)(7), which requires an appellant's brief contain citations to relevant authority. (107 Ill. 2d R. 341(e)(7).) We further find that the trial court's denial of Karen's rule to show cause is supported by the record. The trial court found that from January 1, 1986, to the time of judgment, John had paid Karen $11,000. Assuming maintenance of $1,000 per month, John should have paid Karen $9,000 from January 1, 1986, to September 30, 1986, at which time maintenance was reduced. Thus, for the time period in question, John paid $2,000 more than he owed for maintenance. Therefore, the decision of the trial court was not

against the manifest weight of the evidence.

## II

Karen next contends that the trial court erred in terminating John's obligation to provide housing and other items. In making this contention, Karen argues that John's obligation to provide housing is a property right which may not be modified. In response, John argues that the obligation to provide housing was in the nature of maintenance and was therefore modifiable. We agree.

■ Provisions which constitute a property settlement are generally not modifiable or revocable. (*In re Marriage of Lowe* (1981), 101 Ill. App. 3d 317, 318.) In contrast, provisions which constitute an obligation to pay future maintenance may be modified on a showing of a substantial change in conditions. 101 Ill. App. 3d at 319; Ill. Rev. Stat. 1985, ch. 40, par. 510.

In *In re Marriage of Lowe*, this court defined periodic alimony, now maintenance, as follows:

> " 'It is for an indefinite period of time and usually for an indefinite total sum. It is based upon the husband's income and the needs of the wife determined from the standpoint of the manner in which they have been accustomed to live. It is modifiable after decree when the wife's needs increase or decrease, or when the husband's ability to pay increases or decreases. * * * [I]t takes the form of periodic allowances which do not vest until they become due.' " 101 Ill. App. 3d at 319-20, quoting *Walters v. Walters* (1950), 341 Ill. App. 561, 567.

In contrast, a property right is defined as a sum certain. (*Lowe*, 101 Ill. App. 3d at 320.) Often courts have found that an agreement is nonmodifiable where there is to be payment of a sum certain in installments over a period of time. See, *e.g.*, *Walters v. Walters* (1951), 409 Ill. 298, 303; *In re Marriage of Burgstrom* (1985), 135 Ill. App. 3d 854, 857-58.

■ In the instant case, the agreement provides that John is obligated to provide a residence for Karen and Ashley until the earliest of one of the following occurrences: (1) the remarriage of Karen; (2) 120 days of cohabitation between Karen and any man; (3) the death of John, Karen or Ashley; or (4) Ashley's 19th birthday. In the event that Ashley reaches her 19th birthday prior to any of the other events occurring, the agreement provides that John will continue to provide a residence for Karen for a single occupant only. The agreement providing for a residence is indefinite in that there is no specific cutoff date and therefore not a sum certain. Consequently, it should be con-

sidered a maintenance agreement which is by its nature modifiable. (See *Lamp v. Lamp* (1980), 81 Ill. 2d 364 (court found that possession of marital home until youngest child's 18th birthday was modifiable).) Consequently, we find that the trial court did not err in modifying John's obligation to provide a residence for Karen.

## III

Karen next contends that the trial court erred in modifying her maintenance award because the wording of the agreement precludes modification. In response, John contends that the agreement was modifiable and properly modified due to a substantial change in conditions, namely, his income decreasing from $144,000 in 1977 to $74,000 at the time of the hearing and Karen's income increasing from nothing in 1977 to $18,500 at the time of the hearing.

■ Once an agreement is incorporated into a judgment, it loses its contractual nature, and the court's power to modify an award of maintenance is thereafter governed by statute. (See *Lamp v. Lamp* (1980), 81 Ill. 2d 364, 370.) Consequently, the fact that Karen may have bargained for maintenance and given up her right to certain property does not affect the modifiability of the agreement where specific language restricting modification is absent. Ill. Rev. Stat. 1985, ch. 40, par. 502(f); *Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 503.

Although the agreement was entered into prior to adoption of the Illinois Marriage and Dissolution of Marriage Act, the Act is applicable to the agreement. *Lamp*, 81 Ill. 2d at 369; Ill. Rev. Stat. 1985, ch. 40, par. 801(c).

Section 510 of the Act provides:

> "Except as otherwise provided in paragraph (f) of Section 502, the provisions of any judgment respecting maintenance or support may be modified ***." (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).)

Section 502(f) of the Act provides:

> "Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the separation agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." Ill. Rev. Stat. 1985, ch. 40, par. 502(f).

■ In the instant case, the agreement contains no provision which specifically precludes modification. It therefore appears that under section 502(f) and section 510 of the Act the agreement is modifiable. However, Karen cites *Simmons v. Simmons* (1979), 77 Ill. App.

3d 740, for the proposition that where an agreement sets forth when maintenance is to be altered that agreement controls. However, *Simmons* is easily distinguishable from the instant case. In *Simmons*, the agreement provided that "in no event is the amount of alimony to be modifiable except for death or remarriage of wife." (77 Ill. App. 3d at 743.) In contrast to the foregoing language, the agreement in the instant case contains no language addressing the modifiability of the agreement. However, Karen also argues that the agreement's specific enumeration of reasons for terminating maintenance precludes modification. This reasoning, however, has previously been rejected. In *In re Support of Bowman*, the court held that a settlement agreement which provided that "maintenance shall continue until [the wife's] death or remarriage" did not preclude modification. (*In re Support of Bowman* (1980), 89 Ill. App. 3d 110, 111.) Similarly, this court has held that the term "permanent" maintenance does not preclude modification. (*Schoenhard v. Schoenhard* (1979), 74 Ill. App. 3d 296, 300.) We therefore hold that the trial court did not err in modifying maintenance.

Affirmed.

LINDBERG, P.J., and NASH, J., concur.