INTERSTATE BANK OF OAK FOREST, Plaintiff-Appellee, v. PETER J. CARDONA *et al.*, Defendants (Kathy Cardona, Intervenor-Appellant).
Third District   No. 3—87—0495

Opinion filed March 7, 1988.

Stefanich, McGarry, Wols & Okrei, Ltd., of Joliet (Bennett J. Braun, of counsel), for appellant.

James T. Ashack, of Elmore & DeMichael, of Oak Forest (Marcia L. Clegg, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Kathy Cardona was granted leave to intervene in foreclosure proceedings filed against Peter Cardona, her former husband. Kathy asserted that she obtained a lien interest in Peter's real estate by virtue of a judgment which dissolved the Cardona marriage and ordered Peter to make certain payments to her. The trial court denied Kathy's lien claim and she filed the instant appeal. We affirm.

On November 13, 1981, a judgment dissolving the marriage of Kathy and Peter Cardona was entered in the circuit court of Will County. The judgment incorporated a comprehensive written agreement of the parties which was signed on October 29, 1981. The relevant terms of the agreement are summarized below. Kathy quitclaimed all of her right, title, and interest in a parcel of real estate located in Park Forest and Peter quitclaimed all of his right, title, and

interest in a parcel of real estate located in Park Forest South. Peter waived and released all claims for past, present, and future maintenance and support. Another provision stated that "in fulfillment of all marital obligations," Peter agreed to pay Kathy $60,000. The sum was to be paid in 126 installments over a period of 10½ years. The agreement provided that Peter was to be responsible for any Federal tax liability which Kathy incurred as a result of the payments. It also stipulated that Kathy was entitled to the payments regardless of her marital status or her cohabitation with another man and that Peter could not seek a reduction in the amount he was obligated to pay on the basis of Kathy's future earnings or income. The final provision of the agreement declared that the parties established and agreed upon the payment provisions in light of existing Federal and State tax laws, and that if the applicable tax laws changed, the parties agreed to make adjustments in the amount and nature of the payments in order to effectuate their original intentions. Kathy recorded the dissolution judgment in the office of the Will County recorder of deeds on July 27, 1982.

In September of 1983, Peter and his present wife, Roxanne, executed a mortgage on certain real estate located in Will County in favor of the Interstate Bank of Oak Forest (Interstate). Interstate recorded the mortgage with the recorder of deeds on October 31, 1983. Upon their default, Interstate instituted foreclosure proceedings against Peter and Roxanne. Kathy filed a petition to intervene in the foreclosure proceedings, alleging that she obtained a lien interest in the property by the recorded judgment for dissolution which ordered Peter to pay her $60,000 in installments. Kathy further stated that Peter was in arrears with the payments due her. The trial court granted Kathy leave to intervene.

Interstate moved for entry of an order of default and for an order of foreclosure and sale. Following a hearing, the trial court granted Interstate's motion and denied Kathy's lien claim in full. Kathy filed the instant appeal and requests that this court reverse the trial court's decision denying her lien claim and remand for a determination of the accrued arrearage.

Kathy claims that her recorded dissolution judgment is within the scope of section 12—101 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 12—101) and therefore became a lien on Peter's real estate when it was recorded. Interstate presents two counterarguments: first, that the payments Peter was ordered to make were for maintenance and because the trial court did not order that the payments be made a lien, Kathy has no lien interest in the

property (Ill. Rev. Stat. 1985, ch. 40, par. 703); and second, that a dissolution judgment such as the one before us which orders payment of a sum of money over a 10-year period is not the type of judgment contemplated by section 12—101 because there is no certainty as to the amount due at any given time.

■ We find Interstate's first counterargument persuasive. Although the installment payments provided for in the agreement were not specifically labelled "maintenance," this does not preclude a finding that the payments were, in fact, maintenance because the characterization of a financial settlement between the parties does not depend on the label they apply in the agreement. As with any contract, the intent of the parties must govern the interpretation of the settlement agreement and unless the agreement is ambiguous or incomplete, the intent of the parties must be discovered from the language of the settlement agreement itself. (*Olson v. Olson* (1983), 114 Ill. App. 3d 28.) Upon examination of all of the relevant provisions contained in the parties' agreement, we find ample support for Interstate's contention that the financial arrangements were intended by the parties to be maintenance payments. Specifically, we find that the agreement provides for maintenance in gross.

■ Maintenance in gross has generally been defined as a sum certain of money, payable in installments for a fixed period of time, which is to be received by the former spouse regardless of changes in circumstances. (*Ihle v. Ihle* (1981), 92 Ill. App. 3d 893.) Unlike property settlements, under which a former spouse receives payments in exchange for all marital rights, maintenance in gross payments are made solely in recognition of the duty of one spouse (usually the husband) to support the other spouse. *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 995.

■ In the instant case, the agreement provided that Peter would make the installment payments to Kathy "in fulfillment of all marital obligations." Further, Peter, but not Kathy, waived all claims for maintenance and support. These provisions permit the reasonable inference that the parties intended the payments to be made in recognition of Peter's duty to support Kathy. Under the agreement, Kathy was to receive the payments regardless of changes in her financial situation, which is consistent with general maintenance in gross provisions. The parties' agreement that Peter's obligation to make the payments would not terminate upon Kathy's remarriage or cohabitation with another man does not negate a finding of alimony in gross. (*In re Marriage of Kozloff* (1984), 101 Ill. 2d 526.) Finally, the parties stipulated that the payments were established and agreed upon in

218

light of existing tax laws and, in fact, the payments satisfied the requirements for deductibility under the Internal Revenue Code. (26 U.S.C. §§71, 215 (1976).) That Peter and Kathy agreed to modify the payments if the tax laws changed further supports that they intended the payments to be maintenance. Accordingly, we find as a matter of law that the installment payments in the settlement agreement were intended to be maintenance payments.

■■ Having determined that the dissolution judgment ordered maintenance payments, it is necessary to decide whether the judgment was a lien on Peter's real estate. Section 703 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 703) provides that a judgment ordering payment of maintenance may be made a lien on real estate, but only if the decree itself recites that it shall become a lien. The Cardona dissolution judgment did not provide that the order of payment was to become a lien on Peter's real estate. Absent that recital, no lien in favor of Kathy arose. Accordingly, the trial court correctly denied the lien claim Kathy asserted during the foreclosure proceedings.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.